IN RE PROCEEDINGS TO OPEN AND WIDEN OAK STREET, Under Kansas City Ordinance No. 41446; KANSAS CITY v. MICHAEL McTERNAN, FRANK M. OGLEBAY, JENNIE OGLEBAY and ELLA B. ADAMS, Appellants.

In Banc, May 23, 1925.

1. **WIDENING STREET: Stayed to Await Construction of Viaduct.** A proceeding to assess benefits and damages arising out of an ordinance directing that a certain portion of a street be widened need not await a determination of another proceeding extending and prolonging the street, including in the extension the construction of a viaduct over railroad tracks, which matter, as to the point of crossing and the apportionment of the expense, is pending be-

In re Oak Street; Kansas City v. McTernan.

fore the Public Service Commission. And particularly is such stay unnecessary where it is wholly immaterial whether the street as widened and extended ultimately becomes a part of a more extensive thoroughfare as contemplated by the other ordinance looking to a general improvement.

2. ———: Validity of Ordinance: Removal of Alderman from Ward: De Facto Officer. The city charter provided that if a member of the Lower House of the Common Council shall, after his election, move from the ward in which he was elected, "his office shall thereby be vacated." A member had removed from the ward in which he had been elected, but for a long time thereafter he continued to attend the meetings of the Council and to participate officially in its proceedings, including the passage of the ordinance to widen the street which it is here contended is void because without his vote it did not receive the vote of a majority of the members; but the fact of his removal was not known to the other city officials or to the public generally. *Held*, that he was a *de facto* alderman, and for reasons of public policy his acts as such must be deemed valid and binding.

3. ———: ———: Incomplete Assessment: Form of Condemnation Certificates Left to Future Action. An ordinance providing that the assessments to pay for private property taken or damaged by widening the street, if not voluntarily paid, shall be paid in ten equal annual installments, and that condemnation certificates shall be issued "in such form as may hereafter be fixed by ordinance," and directing the Board of Public Works to "sell such certificates at such prices, not less than the face value of the assessments, as may be obtainable," the proceeds to be used to pay for the property taken or damaged, is not void on the theory that it does not provide a complete method of payment, in that it leaves the determination of the form of the certificates to the future action of the Council, which may never be taken, where special benefits aggregating the amount of the damages have been assessed against property in the benefit district and made liens thereon—the certificates being designed merely to accelerate the payment of the installments as they respectively become due.

4. ———: Benefit District: Arbitrary Formation. A benefit district, a mile long and a block wide, and including all lots fronting on the street to be widened, including the part not widened, where there is no showing that any property not included in the district would, by reason of its locality or otherwise, derive special benefit from the improvement, cannot be held, in the matter of defining the limits within which private property will be deemed benefited, to have been arbitrarily or unreasonably defined.

5. ———: ———: Unreasonably Restricted: City-Wide Improvement. The widening of a street for nine blocks, in the midst of a great

city, cannot as a matter of law be declared to be a city-wide improvement, and an ordinance confining the benefit district to the immediate locality of the improvement cannot be declared to be unconstitutional for that reason alone, even though the part to be widened is designed to become a part of the most used thoroughfare of the city. The immediate locality of the improvement will presumptively receive a benefit entirely different from that which will inure to the public at large, and an ordinance which conforms to the provisions of the charter may, without transgressing constitutional limitations, provide for the ascertainment of both the public and private benefit, and require each to contribute to the expense of the improvement from which they are respectively derived.

6. ———: Assessments Limited to Actual Benefits: Charter Provisions: Instruction. If the city charter does not expressly limit the special benefit which may be assessed against private property for the expense of a local improvement to the amount of benefit it actually receives, it must be construed in connection with the organic law, which does impose such a limitation, and an instruction which so construes it prevents such defective charter limitation from working an injury to the property owner.

7. ———: No Evidence of Special Benefits. In view of the record recitals in this case it does not lie in the mouth of property owners assessed with special benefits to say that there was no evidence of special benefits arising from the widening of a street for nine blocks in the midst of a great city.

8. ———: Assessment of Benefits: Nominal Assessment against City: Instruction. Where the instructions relating to the assessment of benefits contained general directions only, and left the specific amounts to be assessed against the city and the owners of private property respectively to the unfettered discretion of the jury, it cannot be said that in assessing a nominal amount against the city the jury disregarded the instructions.

9. ———: ———: Interest. Under the Charter of Kansas City the question whether the city must pay interest on the amount of the awards of damages from the date of the awards to the dates of their respective payments is not a question for the jury to determine.

---

Citations to Headnotes: Headnote 1: Municipal Corporations, 28 Cyc. p. 1091 (Anno). Headnote 2: Municipal Corporations, 28 Cyc. p. 376; Officers, 29 Cyc. p. 1389. Headnote 3: Municipal Corporations, 28 Cyc. p. 1006. Headnote 4: Municipal Corporations, 28 Cyc. p. 997. Headnote 5: Municipal Corporations, 28 Cyc. p. 1122. Headnote 6: Municipal Corporations, 28 Cyc. pp. 259, 1128. Headnote 7: Municipal Corporations, 28 Cyc. p. 1180. Headnote 8: Municipal Corporations, 28 Cyc. p. 1180. Headnote 9: Municipal Corporations, 28 Cyc. p. 1180.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson, Judge.*

AFFIRMED.

*Wash Adams, John W. Adams, Francis C. Downey* and *Gerson B. Silverman* for appellants; *John B. Quigley* and *Harry Howard* of counsel.

(1) The benefit district designated in the Oak Street Ordinance is unreasonably and unconstitutionally restricted. The court erred in overruling appellants' motion to dismiss. Lewis on Eminent Domain (2 Ed.) 476; City of Detroit v. Daly, 68 Mich. 503. (2) Section 3, Article VI of the City Charter, providing for the method of awarding damages for property taken and damaged, and assessing benefits, is unconstitutional and void. Gast Realty & Inv. Co. v. Snyder Granite Co., 240 U. S. 54, 60 L. Ed. 525; St. Louis v. Brown, 155 Mo. 562; Martin v. Dist. Columbia, 250 U. S. 135, 51 L. Ed. 743; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582; Chicago Ry. Co. v. McGrew, 104 Mo. 282; Isam v. Miss. Cent. Ry. Co., 30 Miss. 300. (3) The verdict discloses on its face that it is the result of either passion, prejudice and undue influence, or of mistake on the part of the jury. It is confiscatory of the property of appellants and shows an utter disregard of the rights of the citizen, as an individual. It discloses that its results have been reached and could be reached only by an utter disregard of the instructions of the court and the evidence introduced. (4) The court should have dismissed the entire proceeding. The viaduct constituted an essential, indispensable link in the complete scheme and the only provision made for its construction was the attempted enforcement of a contract liability in a tribunal without jurisdiction to decree specific performance. Kansas City v. Frisco Railroad Co., 230 Mo. 369. (5) There was no evidence introduced by the city as to special benefits to any tract within the benefit district. Such benefits

308 Mo. Sup.—32.

must be shown before assessment therefor will be sustained, as the burden of showing the benefit is on the city. Bennett v. Moody, 137 Mo. 384; Newby v. Platte City, 25 Mo. 258; Kansas City v. Bacon, 157 Mo. 450; K. C. Gas Co. v. Holden, 107 Mo. 305; Lockwood v. St. Louis, 24 Mo. 20. (6) The council has the power, as much as the freeholders jury, of determining whether or not property owners are benefited by the improvement. Corrigan v. Kansas City, 211 Mo. 608. From which it follows that the city has the power to determine whether it will be benefited. The jury is bound by the legislative finding. Albright v. Fisher, 164 Mo. 56; Jacks v. Merrill, 201 Mo. 91. (7) The city has the power to determine the necessity and has legislatively declared that the entire community will be benefited by the scheme of improvement. Simpson v. Kansas City, 111 Mo. 237; Kansas City v. Bacon, 157 Mo. 465. This benefit the city at large must pay for. Kansas City v. Morton, 117 Mo. 457. (8) The city has the power to fix the boundaries of the benefit district (City Charter Art. XI, Sec. 2). In such case it may not so restrict the area declared benefited as virtually to make those whose property was taken pay for their own property. Lewis, Em. Dom. (2 Ed.) 476; Detroit v. Daily, 68 Mich. 503; Rhoades v. Toledo, 6 Ohio, 9. (9) The benefits for which the property owners are compelled to pay through assessment of their property, must be present, actual, instant benefits. Not speculative or expected to arise in future. Mills, Eminent Domain, sec. 174; Met. West Side Ry. Co. v. Stickney, 150 Ill. 363; Detroit v. Daily, 68 Mich. 503; Newby v. Platte City, 25 Mo. 258; Kansas City v. Bowen, 157 Mo. 450; Shoemaker v. United States, 147 U. S. 282, 37 L. Ed. 170. Speculation about the assessment of benefits is just as wrong as speculation as to assessment of damages. Both are condemned by the law. Hutt v. Chicago, 132 Ill. 352; Ice Co. v. City, 147 Ill. 327; Hook v. Railroad, 133 Mo. 322; Isom v. Railroad, 36 Miss. 312; Railroad v. Blackshire, 10 Kan. 488; Railroad v. County, 1 Allen, 331; Brown v. Railroad, 5

Gray, 35; Wreckler v. City, 61 Ill. 149; Mantorville v. Stenglerland, 161 Minn. 488; McCusick v. City, 46 N. W. 769; Markhartz v. Railroad, 64 Wis. 403; Pittsburg Co. v. Rose, 74 Pa. 369; Pinkham v. Chelmsford, 109 Mass. 225; Chicago v. Donegan, 196 Ill. 522. (10) The right of the city to condemn has for its foundation public necessity, Guest v. Brooklyn, 69 N. Y. 506, and the exercise of the right must be strictly construed against the city. Light Co. v. Scheurich, 174 Mo. 235; Thurston v. St. Joseph, 51 Mo. 510; Clemens v. Ins. Co., 184 Mo. 46. (11) Private property cannot lawfully be specially assessed to pay for improvements beneficial to the public, to the extent of the public benefit. Norwood v. Baker, 172 U. S. 269; Tidewater Co. v. Coster, 18 N. J. Eq. 519; Van Norden v. Norton, 99 U. S. 378; City of Norfolk v. Chamberlain, 89 Va. 196; Weeks v. Milwaukee, 10 Wis. 258; McCormack v. Patchin, 53 Mo. 36; City of Detroit v. Daily, 68 Mich. 503; Scott v. Toledo, 36 Fed. 385. (12) In this Oak Street proceeding, the city is condemning the land on each side of the block between Nineteenth and Twentieth Streets, for the sole purpose of turning the same over to the Terminal Railway, with expense to it, to enable that corporation to fulfill a private contract. This may not be done. Kansas City v. Hyde, 119 Mo. 507; Lockwood v. Railroad, 122 Mo. 86; Ligare v. Chicago, 139 Ill. 46. (13) The Oak Street ordinance is void; it fails to fix the method of paying for the property taken or damaged.

*Solon T. Gilmore* and *J. C. Petherbridge* for respondent; *Henry S. Conrad, Elliott Jones* and *A. L. Cooper* of counsel.

(1) Alderman Sandler, who voted for the ordinance, was an officer *de facto,* and his act is binding. Perkins v. Fielding, 119 Mo. 158; Simpson v. McGonegle, 52 Mo. App. 540; City of Westport v. Kansas City, 103 Mo. 141; Buis v. Cooper, 63 Mo. App. 202; Abington v. Steinberg, 86 Mo. App. 639; Hilgert v. Paving Co., 107

Mo. App. 385. (2) Section 2 of Article VI of the Kansas City Charter authorizes the common council to fix and define in the ordinance the limits of the benefit district; the benefit district as fixed in the ordinance under consideration is not unreasonable or unconstitutional. Kansas City v. Smart, 128 Mo. 294; Kansas City v. Baird, 98 Mo. 215. (3) The trial court committed no error in overruling appellants' motion for a continuance. The matter of granting a continuance is wholly within the sound discretion of the trial court. Riggs v. Fenton, 3 Mo. 28; St. Louis Ry. Co. v. Holladay, 131 Mo. 440; Peterson v. Railway Co., 211 Mo. 498; Turnbow v. Railway Co., 277 Mo. 644; Roy v. Kansas City, 204 Mo. App. 332; Shirk v. Shirk, 75 Mo. App. 573; Trimble v. Light Co., 115 Mo. App. 605; Ellis v. Wahl, 180 Mo. App. 517; Laun v. Ponath, 105 Mo. App. 203. (4) The amount which should be assessed against the city as benefits, or against any particular tract of land within the benefit district, under the Kansas City Charter, was entirely within the power of the jury to determine and fix, and their determination will not be disturbed on review. Kansas City v. Smart, 128 Mo. 272; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Bacon, 157 Mo. 450; Kansas City v. Baird, 98 Mo. 215; Shoemaker v. United States, 147 U. S. 282. (5) Section 3 of Article VI of the Kansas City Charter, providing for the method of awarding damages and assessing benefits in condemnation proceedings, is not unconstitutional or void. Kansas City v. Marsh Oil Co., 140 Mo. 472; Kansas City v. Armour, 198 S. W. (Mo.) 821; St. Louis v. Brown, 155 Mo. 545. (6) There is nothing on the face of the record or in the verdict which discloses passion, prejudice, undue influence or mistake. The verdict is fully sustained by the evidence and was the result of a most painstaking and careful trial lasting six weeks, and a further consideration of the matters by the jury for three months longer. St. Louis v. Brown, 155 Mo. 545. (7) The trial court did not commit error in refusing appellants' motion to dismiss this proceed-

ing.  This proceeding was in no way dependent upon the outcome of the construction of a viaduct over the Kansas City Terminal Railway tracks south of Twentieth Street.  That was another proceeding entirely separate and independent of this proceeding.  (8)  There was an abundance of evidence sustaining the assessment of benefits.  Whether private property within the benefit district was specially benefited, or not, and the amount of such benefits, were questions of fact for the jury to determine.  Kansas City v. Baird, 98 Mo. 221; Kansas City v. Bacon, 157 Mo. 450.; St. Louis v. Brown, 155 Mo. 567; Shoemaker v. United States, 147 U. S. 282.  (9) There is nothing in the record showing that private property was specially assessed with a public benefit.  This specific point was not raised by appellants in their motion for a new trial.  It cannot be raised here now.  St. Louis v. Brown, 155 Mo. 568; Wilson v. Taylor, 119 Mo. 631.  (10)  The verdict is conclusive here as to both damages and benefits in the absence of fraud or gross abuse and none is shown.  Kansas City v. Smart, 128 Mo. 296; St. Louis v. Abeln, 170. Mo. 318; Kansas City v. Baird, 98 Mo. 218; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Morton, 117 Mo. 446; Corrigan v. Kansas City, 211 Mo. 608; Kansas City v. Railroad Co., 84 Mo. 410.

RAGLAND, J.—This controversy grows out of a proceeding to widen and extend a street under the provisions of the Charter of Kansas City.  The street sought to be widened and extended is Oak, a north-and-south street.  As now established it extends from Eighth on the north to Twentieth on the south and is fifty-six feet wide.  Admiral Boulevard—an east-and-west street— lies a block north of Eighth, and the right of way, tracks and a freight yard of the Kansas City Terminal Railway Company lie immediately south of Twentieth, also an east-and-west street.  On December 12, 1921, an ordinance was passed widening Oak Street between Eleventh and Twentieth, to the extent of fourteen feet on each

side, and extending it north, through the middle of a block, from Eighth to Admiral Boulevard. The ordinance formally condemned all the private property within the boundaries of the street as widened and extended, and provided that the compensation for the property taken or damaged should be "wholly raised by special assessments made against the city and against the several lots, tracts and parcels of private property" within a benefit district which it determined and prescribed, all in accordance with Article VI of the Charter. The benefit district so prescribed extends from Twentieth Street to Admiral Boulevard between parallel lines, one of which lies a half block east of Oak Street and Oak Street extended, and the other a like distance west thereof. It is approximately a mile long and a block wide and is located in the part of Kansas City devoted to business and distinguished from residential purposes.

Pursuant to a provision therein that the damages caused by such public improvement should be ascertained in a court proceeding, begun in the first instance and maintained in the Circuit Court of Jackson County, the ordinance, accompanied by a map containing a description of the several lots or parcels of private property to be taken or damaged, with the respective names of the owners thereof, was filed in that court. Subsequently and pursuant to notice duly given a jury of six freeholders was empaneled to assess the damages and benefits. It appears that 154 tracts, and in connection with them 117 buildings, owned by practically that many different persons and corporations were subject to an investigation as to both damages and benefits, and 37 tracts under different ownerships as to benefits only, they lying between Eighth and Eleventh Streets where no additional property was taken for the purpose of the street.

With respect to the hearing the record recites:

"Before the court and jury for a period of six weeks, every day continuously (except Sundays) evi-

dence, oral and documentary, was introduced upon the trial of this case, on the part of Kansas City, and upon the part of each and every property owner affected by this cause and upon the part of these appellants respectively; . . .

"The jury . . . collectively and individually, after being empaneled and sworn, and before it heard any evidence and afterwards and during the trial, and before it returned its verdict, by the direction of the court made to the jury, examined the entire district to be condemned and taken and to be benefited as set forth in the said Oak Street Ordinance and the jury examined each and every piece of property and the improvements, if any, thereon, to be taken, and to be benefited, and the evidence was introduced upon the witness stand in the cause by all parties in interest of the reasonable market value of the respective properties to be taken, and of each piece thereof and of the reasonable market value of the improvements taken thereon."

At the conclusion of the hearing which, as stated, lasted six weeks, the jury was duly instructed and the issues submitted to them. After having the matter so submitted under consideration for about three months the jury returned a verdict assessing damages and benefits. With respect to the damages the verdict recites:

"We ascertain the actual value of the property taken and damaged by reason of the opening, widening, establishing, extending and altering of said Oak Street, under said Ordinance No. 41446, and also the actual damage done to each piece of private property not actually taken by reason of these proceedings, as the just compensation therefor to be as follows, to-wit: . . . "

As to benefits:

"To pay the just compensation so ascertained and determined for the private property taken and damaged for the opening, widening, establishing, extending and altering of Oak Street, aforesaid, we assess against Kansas City, Missouri, as the amount of benefit to said city, and the public generally, including the benefit to all the

property of said city within the benefit district the sum of twenty-one dollars, and the balance of such compensation we assess against the several lots and parcels of private property within the benefit district, exclusive of the improvements thereon, deemed actually and specially benefited by the proposed opening, widening, establishing, extending and altering of said Oak Street, each lot or parcel of ground so benefited being assessed with an amount which bears the same ratio to such balance as its benefit bears to the whole benefit to all the private property as assessed. No piece of private property herein is assessed with benefits in any amount in excess of the actual, special and peculiar benefits which the same will receive by reason of the proposed opening, widening, establishing, extending and altering of said Oak Street, as follows, to-wit:''

The total damages awarded for property taken and damaged was $862,203.39; a like amount was assessed as benefits against the city and property within the benefit district. From the judgment of the circuit court confirming the verdict the owners of three tracts affected thereby have appealed: McTernan and the Oglebays with respect to damages awarded, and Ella B. Adams as to benefits assessed.

At the same time that the ordinance widening and extending Oak Street, called the Oak Street Ordinance, was passed, a companion ordinance, known as the Viaduct Ordinance, was enacted. The purpose of this latter ordinance as disclosed by the preamble was as follows:

''Whereas, owing to the rapid growth and development of Kansas City, the advent and increasing use of motor cars and trucks, the north-and-south public traffic of the city has become badly congested and is constantly increasing over the existing streets and viaducts crossing the tracks and right of way of the Kansas City Terminal Railway Company, leading to and from the business centers and the resident district of the city; and

''Whereas, in order to provide for and relieve such constantly increasing congested traffic, it is necessary

and it is the purpose of Kansas City, to construct a great north-and-south trafficway from the Armour-Swift-Burlington Bridge over the Missouri River, at the north side of the city, through the business sections thereof to the southern part of the city and along what is known as the Locust Street Connection (a public highway) connecting with Admiral Boulevard; thence south from Admiral Boulevard over and along Oak Street to Twentieth Street; thence south along Oak Street, produced from the north, over and across the tracks, right of way and land of the Kansas City Terminal Railway Company to Gillham Road; thence south along Gillham Road to Locust Street; thence south along Locust Street to Twenty-seventh Street; thence along Gillham Road south and southeastwardly, connecting with other streets and trafficways leading to the southern, eastern and western part of the city. The Locust Street connection has been provided for; Oak Street from Admiral Boulevard to Twentieth Street is to be widened at certain points and improved under an ordinance providing therefor. In order to reach the south side of the tracks, right of way and lands of the Kansas City Terminal Railway Company, it will be necessary to span such tracks, right of way and lands with a viaduct and an approach thereto, in Oak Street produced, from the south line of Nineteenth Street to Gillham Road on the south; to open, widen and alter Locust Street from Gillham Road (near Twenty-fifth Street) to Twenty-seventh Street, and rearrange and alter Gillham Road from the south line of the right of way of the Kansas City Terminal Railway Company to Twenty-fifth Street . . . when such highway is completed it shall be known as 'Oak Street Trafficway.' '' The Viaduct Ordinance, among other things, ordered the Kansas City Terminal Railway Company, pursuant to the terms of a contract alleged to have been entered into between the company and Kansas City, ''to construct a viaduct and its approaches to be used as and for a public highway in Oak Street and Oak Street produced south, over and across its tracks, right of way

and lands to the south line thereof, beginning in Oak Street at the south line of Nineteenth Street, and extending south in Oak Street and Oak Street produced to the south line of its lands and right of way in Kansas City, Missouri.'' The ordinance further provided that ''if said company does not agree within thirty days . . . to comply with the terms of this ordinance, then the City Counselor is hereby instructed to take such legal action as his department may deem proper to enforce a compliance therewith on behalf of said company.'' At the time this cause was called for trial a proceeding was pending and undetermined before the Public Service Commission wherein Kansas City sought an order compelling the railway company to comply with the provisions of the ordinance with respect to the construction of a viaduct. Bottomed on the facts just outlined certain property owners, including these appellants, filed a motion that this cause be continued from time to time and held in abeyance until it could ''be definitely ascertained whether or not the intended scheme and plan of the said Kansas City, Missouri, as proclaimed in its viaduct ordinance, is or will be an established fact.'' The motion was overruled, and the trial proceeded with the result as heretofore stated.

Other record facts will be stated where necessary in connection with the questions considered.

Appellants have made no formal assignment of error. They have, however, in thirty-one paragraphs covering fifty-five printed pages, under the caption, ''Points and Authorities,'' set forth numerous propositions any one of which they aver is sufficient to overturn the judgment *nisi*. There is such an over-lapping of subject-matter and such an admixture of argument that it is difficult to isolate the specific grounds relied upon for a reversal. But from such an analysis as we have been able to make we summarize the appellants' contentions as follows: I, The motion for a continuance should have been sustained, and for the same reason it was error (1) to give Instructions 22 and 55 and (2) to refuse In-

struction B; II, The ordinance pursuant to which the proceeding was had is void (1) because not lawfully enacted and (2) because it does not provide a method of paying for the property taken and damaged; III, Said ordinance is unconstitutional (1) because the benefit district created by it is unreasonably restricted and (2) because it requires the cost of a city-wide benefit to be borne by the owners of property in a circumscribed locality; IV, The Charter provision (Sec. 3, Art. VI) relating to the assessment of damages and benefits is unconstitutional (1) because it unduly limits the award of consequential damages and (2) because it requires benefits to be assessed to the extent necessary to pay the damages regardless of the actual benefit derived to the property against which it is assessed; and V, (1) There was no evidence of special benefits, (2) the damages allowed the appellant McTernan are inadequate, (3) the verdict is not responsive to the court's instructions and (4) Instruction A should have been given.

I.  Appellants insist that the trial of this cause should have been stayed until it could be definitely ascertained whether the city would succeed in carrying out its plan to open and establish "Oak Street Trafficway," including the construction of a viaduct over and across the lines and property of the Kansas City Terminal Railway Company.

Stay of Proceeding.

In these days but few public improvements are undertaken which have no relation to a definite plan of city building formulated by a plan commission or similar advisory body. But for reasons which are obvious all the improvements comprehended within such a plan cannot go forward simultaneously. Ordinarily it is intended that they be accomplished progressively as required by the growth and expansion of the city. In the instant cause it is wholly immaterial that it is intended that Oak Street as widened and extended shall ultimately become a part of a much more extensive thoroughfare. By the passage of the Oak Street Ordinance Kansas City in

effect legislatively declared, as it was competent for it to do, that a public necessity existed for the enlargement and extension of Oak Street independently of any other contemplated improvement and without reference thereto. And in this proceeding it seeks merely to effectuate the single purpose declared by the ordinance, nothing more. The Viaduct Ordinance and matters relating thereto, offered in evidence by certain of the property owners, were therefore wholly irrelevant for any purpose of the case. Instructions 22 and 55 which are in accord with this view were properly given, and Instruction B, the converse of them, was properly refused.

But it is contended that the necessity for widening and extending Oak Street as specified in the ordinance is wholly dependent upon whether the street is projected south by means of a viaduct across the lines of the Kansas City Terminal Railway Company; that without such a southern extension the street is a *cul de sac*. This last assertion is clearly without a basis of fact. At its southern terminus Oak Street connects with Twentieth, and Twentieth in turn, and within the compass of a few blocks, with a number of north-and-south thoroughfares which cross the lines of the Terminal Railway Company. It is altogether probable that Oak Street, even as widened and extended, will not be as extensively traveled as it would be if carried across the railroad by a viaduct, but we cannot say as a matter of law that there is no necessity for its enlargement unless the viaduct is built. Nothing in fact is disclosed by the proceeding which would warrant judicial interference with the action of the Common Council in declaring that such necessity does exist. [Kirksville v. Hines, 285 Mo. 233, 239.]

II. 1. At the time of the passage of the Oak Street Ordinance the Lower House of the Common Council of Kansas City consisted of sixteen members. When the ordinance was voted upon it received a majority of one.

De Facto Officer. One of those who voted for it was Harry Sandler who had previously moved from the

ward in which he had been elected. Section 3, Article II, of the Charter provides that "if, after his election he (a member of the Lower House) shall move from such ward, his office shall thereby be vacated." The record shows that Sandler continued to attend the meetings of the Council and to participate officially in its proceedings, including the passage of the ordinance in question, for a long period of time after his removal from the ward from which he had been elected. The fact of his removal, however, was not at the time known to the other city officials or to the public generally. Under the circumstances he was a *de facto* alderman, and for reasons of public policy his actions as such must be deemed valid and binding. [Perkins v. Fielding, 119 Mo. 149, 159-160; Simpson v. McGonegal, 52 Mo. App. 544-548.]

2. The ordinance under consideration provided that the assessments to pay for the private property taken or damaged, if not paid voluntarily, should be paid in ten equal annual installments bearing seven per cent interest per annum. It further

**Incomplete Assessment: Condemnation Certificates.** provided for the issuance of condemnation certificates for the assessments not voluntarily paid "in such form as may hereafter be fixed by ordinance," and directed the Board of Public Works to "sell such certificates at such price, not less than the face value of the special assessments . . . as may be obtainable," the proceeds to be used for the payment of property taken or damaged. Appellants make the point that the ordinance, with respect to providing a method for the payment of damages, is not complete in that it leaves the determination of the form of the condemnation certificates to the future action of the Council, which may never be taken. It is obvious, however, that the means for obtaining the money with which to pay for the property taken or damaged has been fully provided for. Pursuant to the ordinance and charter provisions special benefits aggregating the necessary amount have been assessed against property in the

benefit district and adjudged to be liens thereon. These assessments are due in ten equal annual installments with interest and their payment may be coerced by special execution. The city, however, cannot take possession of the property condemned until the damages are fully paid, and the provisions relating to the issuance of condemnation certificates are designed merely to accelerate such payment. It is true that the Common Council may never prescribe the form of the proposed condemnation certificates, and even if it does, the Board of Public Works may not be able to sell them at a price equal to the face value of the special assessments. In either of such events the taking possession by the city of the property condemned will have to await the maturity of all the installments of the special assessments. In the meantime the rights of the owners with respect to the use of their property may be somewhat hampered by the pendency of the proceeding, but, if so, such interference must be deemed one of the unavoidable hardships incident to the exercise of the power of eminent domain. [Land & Improvement Co. v. Kansas City, 293 Mo. 674, 679; Brunn v. Kansas City, 216 Mo. 108, 119.]

III. 1. As stated, the benefit district prescribed by the ordinance is approximately a mile long and a block wide. It includes within its boundaries all lots which front on Oak Street, including the part not widened. No presumption arises from the general situation, and no effort was made to show, that any other property by reason of its locality or otherwise would derive special benefit from the improvement. There is therefore no basis for a holding that the ordinance in the matter of defining the limits within which private property will be deemed benefited is arbitrary or unreasonable.

Benefit District.

2. The argument is again pressed that whatever benefit may be derived from widening and extending Oak Street is city-wide and not confined to the imme-

**City-Wide Benefit.** diate locality of the improvement. In this connection it may be said that the fact, if a fact, that Oak Street, as widened and extended, is designed to become a part of the most used thoroughfare in Kansas City is wholly immaterial on the question of special benefits. This because the property in the immediate locality of the improvement *presumptively* receives a benefit entirely different from that which inures to the public at large. That an ordinance of Kansas City, which conforms to the provisions of its charter, may, without transgressing constitutional limitations, provide for the ascertainment of both the public and the private benefit and require each to contribute to the expense of the improvement from which they are respectively derived is no longer an open question.

IV. 1. Appellants have devoted several pages of their printed argument to a critical examination and analysis of the language of paragraph "Third" of Section 3, Article VI, of the Charter of Kansas **Charter Provisions: Assessment Limited to Actual Benefit.** City. From such exposition they derive the conclusion that this provision unduly restricts the award of consequential damages. We do not feel called upon to follow them into this field of exegesis. This, because the jury were fully advised, by instructions which were unimpeachable, as to all the elements which should be considered in the assessment of the damages both direct and consequential.

2. The general instruction as to the assessment of benefits was in part as follows:

"To pay such compensation you will assess against the city the amount of benefit to the city, and the public generally, if any, including the benefit, if any, to any property of the city within the limits of the benefit district **Instruction.** as prescribed by said ordinance; and the balance of such compensation, you may assess against such of the several lots and parcels of private

property, exclusive of the improvements thereon, which you may deem actually and specially benefited by the proposed improvement, and which is within the limits of the benefit district as prescribed by said ordinance and shown on the plat introduced in evidence; each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as its actual and special benefit, if any, bears to the whole benefit to all the private property so assessed.

"You will assess no property with benefits which is not actually and specially benefited by the proposed improvement. . . .

"*If you find that the damages in this proceeding exceed the actual and special benefits, if any, to all private property to be assessed, including the benefits, if any, to the city and its property within the limits of the benefit district, you will so report and proceed no further.*"

Appellants complain that this instruction would have directed the jury to assess benefits at a sum sufficient to cover the total damages regardless of whether benefits to that extent were actually received, *if* it were not for the portion italicized, and *that part* they say was not authorized by the Charter. It may be true that the Charter does not *expressly* limit the special benefit which may be assessed against private property for the expense of a local improvement to the amount actually received, but it must be construed in connection with the organic law which does impose such a limitation. When so construed appellants' theoretical difficulty disappears.

V. As to the miscellaneous matters grouped under this sub-division: (1) In view of the record recitals it does not lie in the mouths of appellants to say that there was no evidence of special benefits. (2) The award of damages to McTernan was one which under the evidence the jury could reasonably and properly have made. (3) The instructions with reference to the assessments of benefits afforded general directions only, they left the specific amounts to be assessed against the city and the

owners of private property respectively to the unfettered discretion of the jury. It cannot be said therefore that in assessing against the city a nominal benefit only the jury disregarded the court's instruction. In this connection it should be said that there is nothing in the facts of this case to distinguish it from many others in which similar verdicts have been upheld by this court. [Kansas City v. Smart, 128 Mo. 272; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Bacon, 157 Mo. 450.] (4) Instruction A refused by the court would have required the jury to specify in their awards of damages that the city pay interest from the dates of such awards to the dates of payment respectively. If its purpose was to obligate the city to pay interest on the awards, it fell within the prohibition of Section 10, Article VI, of the Charter. In any event the question of interest was not for the jury.

The record disclosing no reversible error the judgment of the circuit court is affirmed. All concur.