PERKINS, *Appellant*, v. FIELDING *et al.*

In Banc, December 23, 1893.

1. **City Council:** VALIDITY OF ORDINANCE: DE FACTO OFFICERS. A private person cannot collaterally assail a city ordinance on the ground that the council which passed it was not legally constituted, since acts of officers *de facto* done under color of right are valid as to the public and third persons.

2. **Public Highway:** DEDICATION: EVIDENCE. On the question whether plaintiff's grantor dedicated certain land for a public highway, a witness testified that the grantor executed a written relinquishment of such land to him as road overseer in which the witness himself had written the description by metes and bounds after examining the grantor's title papers and that the latter delivered it to witness who filed it in the office of the county clerk. This paper could not be found to use at the trial. *Held*, that it was properly admissible in evidence though the witness could not recollect the section in which the land was situated or the few odd feet in the length of one of the lines.

3. ——: ——: EVIDENCE OF INTENTION. Plaintiff cannot testify in such action that he did not intend by anything he said or did in the matter of moving a fence from the land to dedicate such land, since the intent to be ascertained is not the secret intent of the owner but that manifested by his acts and declarations.

4. ———: ———. The facts in evidence in this case *held* sufficient to show a dedication of the land in controversy for a public highway.

*Appeal from Jackson Circuit Court.*—HON. FRANK P. SEBREE, Special Judge.

AFFIRMED.

*R. H. Field* for appellant.

(1) Injunction is the proper remedy to prevent defendants acting outside of the limits of Westport, also to prevent them from trespassing upon plaintiff's land, even if it were inside of Westport. *State ex rel. v. Whitcomb*, 55 Ill. 172; *Stulz v. State ex rel.*, 65 Ind. 492; *City of Delphi v. Startzman*, 104 Ind. 343; High on Injunctions [3 Ed.], ch. 9. (2) The burden of proof is upon the defendants, upon a motion to dissolve temporary injunction. High on Injunctions [3 Ed.], sec. 1470; *Apitz v. Railroad*, 17 Mo. App. 420; *Butler v. Robinson*, 75 Mo. 192; *Railroad v. Engle*, 76 Ill. 317. (3) The city extension is void because no quorum of the board of aldermen was present when it was made. On June 14, 1881, Westport became a city of the fourth class and subject to and governed by the general laws concerning such cities, and its functions and officers as a town under its special charter ceased. Revised Statutes, sec. 977; State Constitution, art. 9, sec. 7; *Sigur v. Crenshaw*, 8 La. Ann. 401; *People v. Brown*, 83 Ill. 95; Endlich on Statutes, sec. 478. (4) But neither three nor four members constitute a quorum nor have any right to organize or act for a body the full membership of which is fixed at eight, and their action is abortive and amounts to naught. *Rex v. Smart*, 4 Burrows, 2241; *King v. Miller*, 6 T. R. (Eng.) 268; *Grogan v. San Francisco*, 18 Cal. 590; Dillon on Munic. Corp. [4 Ed.], secs. 260, 261, 270,

Perkins v. Fielding.

279, 281, 283, 292; 5 Dane's Abridgment Am. Law, 150; *Norton v. Shelby Co.*, 118 U. S. 426; *State ex rel. v. Porter*, 113 Ind. 79; *Ex parte Willocks*, 7 Cowen, 402; *In the matter of James W. Beckham*, 31 How. Pr. 17; *In the matter of Building Sewer, etc.*, *Id.* 43; *Mills v. Gleason*, 11 Wis. 470. (5) The city extension ordinance approved April 14, 1891, is void because it provides a place for the voting in the first and second wards only of Westport, when, as already shown in preceding point, there were then four wards (the four wards that had always existed in Westport). *Ruggles v. Collier*, 43 Mo. 353; *St. Louis v. Clemens*, 43 Mo. 395; *Thompson v. Boonville*, 61 Mo. 282; *Stewart v. Clinton*, 79 Mo. 603; *Westport v. Kansas City*, 103 Mo. 141. (6) The ground on which earth was being, and was about to be, deposited, and to prevent the doing of which the temporary injunction was issued, was no part of the alleged highway, but was plaintiff's private property as shown by the evidence, hence upon this ground alone, if for no other, the order of the trial court dissolving plaintiff's temporary injunction must be here reversed.

*W. A. Alderson* and *W. C. Scarritt* for respondents.

(1) *First.* The ordinance of November, 1881, redistricting the territory of the city of Westport into two wards was regularly and validly enacted; and this being correct every contention of appellant against the extension of the city's limits is without merit. *State ex rel. Brown v. City of Westport*, 116 Mo. 582. That the identical proposition now submitted by appellant was made in case cited, see relator's primary brief in that case, page 67, IV; relator's final brief, page 29, VI; primary brief of respondents, page 26, V. The

ordinance of November, 1881, was passed by the *de facto* aldermen and is valid.    *Adams v. Lindell*, 72 Mo. 189; s. c., 5 Mo. App. 197.    *Second.* Conceding the ordinance of November, 1881, to be invalid, lapse of time and recognition by the public and individuals of the existence of only two wards in Westport from 1881 to 1891, ten years, during which time many obligations were incurred and imposed, will prevent the disorganization of the city's most important territory at this time.    *State ex rel. Brown v. City of Westport, supra; People ex rel. v. Maynard*, 15 Mich. 463; *State ex rel. v. Leatherman*, 38 Ark. 81; *Attorney Gen'l v. Page*, 38 Mich. 286; *Attorney Gen'l v. Hanchette*, 42 Mich. 436; *Attorney Gen'l v. Detroit*, 5 Am. and Eng. Corp. Cases, 497; *Attorney Gen'l v. Detroit*, 26 Mich. 263, 267; *State ex rel. v. Bailey*, 19 Ind. 454; *State ex rel. v. Seay*, 64 Mo. 89; *Jameson v. The People*, 16 Ill. 256; *State ex rel. v. Gordon*, 87 Ind. 171; *Rex v. Dawes*, 4 Burr. 2023; *King v. Stacy*, 1 Durn. and E., 1; *King v. Parry*, 6 Ad. and El., 18; *Worley v. Harris*, 82 Ind. 493; *Black v. Brinkley*, 15 S. W. Rep. (Ark.) 1030.    (2) The dedication of the strip of land in question was complete before the appellant received deed from Jacob Brown. But if not, the appellant's acts constituted dedication, which was made complete by immediate acceptance by the public. By acquiescence he has forfeited all right to the writ of injunction.    High on Injunctions, secs. 1260, 1278; *Traphagen v. Mayor*, 29 N. J. Eq. 206; Morrill on City Negligence, 46; *Havana v. Biggs*, 58 Ill. 483; *Indianapolis v. Kingsbury*, 101 Ind. 200, 213; Dill. Mun. Cor. [4 Ed.], 631, 638.

DIVISION ONE.

BRACE, J.—This is a proceeding by injunction, instituted May 13, 1893, to restrain the defendant

Fielding from grading a strip of land in front of the plaintiff's premises, as a part of Thirty-ninth street, under a contract with the city of Westport, upon the ground that said strip and street are not within the corporate limits of said city, and that said strip is not within the limits of said street. A temporary injunction was granted. The defendants filed a joint answer, averring that the premises were within the corporate limits of the city of Westport and a part of Thirty-ninth street, and that defendant Fielding was duly performing such work under an ordinance and contract with said city, and also a motion to dissolve the temporary injunction, which motion upon the hearing, being sustained, the plaintiff appeals.

I. By an act of the General Assembly approved February 12, 1857 (Acts 1856, 1857, p. 373), the town of Westport was incorporated. This act was amended by an act approved February 27, 1869 (Acts 1869, p. 158). The town of Westport from the date first aforesaid continued to exist as a municipal corporation under the provisions of this charter until the fourteenth of June, 1881, when proceedings were consummated by which it became organized as a city of the fourth class, under the provisions of section 4385, 2 Revised Statutes, 1879, p. 868, and as such has since continued to exist under the name of the city of Westport.

Section 1 of the special charter designated the place as "the town of Westport." Section 2 enacts that "the powers and duties of said town shall be vested in a mayor and councilmen, * * * * "

Section 3 provides that "the mayor of the town shall be chosen by the qualified electors of said town and hold his office for the term of one year" and until his successor is elected and qualified.

Section 4 provides that the town shall be divided into four wards and each ward shall be entitled to

elect one councilman, and that "the town council may, by ordinance, alter the wards from time to time; and whenever they may deem it advisable they shall have power to make two additional wards each of which shall be entitled to elect a councilman."

Section 5 provides that "the councilmen shall hold their offices for the term of one year and until their successors are elected and qualified."

Section 22 provides that "the general election of town officers shall be held on the last Saturday in March, each and every year."

The mayor and councilmen in office, under the provisions of this special charter, continued to discharge the functions of those offices after the date aforesaid, when the town became a city of the fourth class, under the name of the "Mayor and Board of Alderman of the City of Westport," until the next spring election held under the law governing cities of the fourth class on the first Tuesday in April, 1882. On the nineteenth of August, 1881, they passed an ordinance providing that "on and after the first Tuesday in April, 1882, the city of Westport shall be divided into two wards," and thereafter the councilmen from each of said wards annually elected constituted the board of aldermen of said city.

It is conceded that the premises of the plaintiff are without the original limits of the town and city of Westport. By virtue of an ordinance passed by the mayor and board of aldermen on the fourteenth of April, 1891, and of an election held in pursuance thereof, the limits of the city were extended so as to include the premises of the plaintiff, and the strip in controversy. This ordinance is set out at length in the opinion in *State ex rel. Brown v. Town of Westport* (116 Mo. 582), rendered in division number 2, as is also the proceedings in 1881, which culminated in the

organization of the town of Westport as a city of the fourth class. In that case, which was *quo warranto*, the validity of the organization of the defendant as a city of the fourth class in 1881, and of the extension of the city limits in 1891, were directly attacked, and the validity of both sustained, in an elaborate opinion, in which all the judges of that division concurred. In the present case the validity of the proceedings extending the city limits is again attacked, the position of the plaintiff here taken being, that the acting board of aldermen by whom the ordinances were passed extending the city limits was not a legally constituted board of alderman of the city of Westport and had no authority to pass said ordinances.

The contention of the plaintiff in this case as stated in brief of counsel is: Point III. "The city extension is void because no quorum of the board of aldermen was present." Point IV. "The city extension ordinance approved April 14, 1891, is void because it provides a place for the voting in the first and second wards only of Westport, when, as already shown in the preceding point, there were then four wards, the four wards that had always existed in Westport." The whole of the argument made in the present case in support of the proposition contained in these "points" is briefly and pointedly put by the same counsel and his associates as proposition VI in the *quo warranto* case in the following language: "Westport having four wards, by its special charter continued to have that number of wards after its alleged organization as a city of the fourth class, and no ordinance having been passed by any board of aldermen elected under the article governing cities of the fourth class reducing the wards of Westport to two, both of the city extension ordinances are void on their face for restricting the voting therein to the first and second

wards of Westport."

The ultimate proposition presented in both cases is identically the same, *i. e.*, that the legislative body designated as the "mayor and councilmen" of the town of Westport, in its special charter after the reorganization of that town under the general law, had no power to pass the ordinance of August 19, 1881, dividing the city of Westport into two wards, and all that is said by the learned council for the plaintiff in his able brief and argument in this case is in support of this proposition and its corollaries. It comprehends the whole of plaintiff's contention on the question of the validity of the extension ordinances in this case, and was one of the points directly urged against their validity in the *quo warranto* case and although not directly and expressly ruled upon in so many words in the opinion in that case, it does not follow that it was not passed upon; the principles therein laid down, and the reasoning followed, being as obviously applicable to, and decisive of, the plaintiff's contention here again renewed, as to the other points in that case, expressly noted, and to which they were applied, that it might have seemed a work of supererogation to particularly mention this point in that case.

By the general law in force in 1881, at the time Westport became a city of the fourth class, it was provided that any city or town in this state, existing by virtue of any special law, might become a city of the class to which its population would entitle it under the law, by passing an ordinance to that effect, and submitting the same to the legally qualified voters thereof, if a majority of such voters ratified such ordinance at an election held for that purpose. Upon proclamation of the mayor or chief officer of such city or town declaring the result of such election, it is provided that "thereafter such city or town shall, by virtue of such

vote, be incorporated under the provision of the general law provided for the government of the class to which such city belongs." R. S. 1879, sec. 4385.

By virtue of the law governing cities of the fourth class it was provided that "the jurisdiction of any city which shall organize under the provisions of this article shall not in anywise be affected or changed in consequence of such reorganization; but the limits, wards and boundaries of such city shall remain, after such change of organization, the same as at the time of such reorganization; and all laws or parts of laws or ordinances not inconsistent with this article which were in operation in such city prior to its reorganization shall continue to be in full force until repealed." R. S. 1879, sec. 4932.

The law then next provides that "a general election for elective officers required by this article shall be held on the first Tuesday in April after the organization of such city, and every two years thereafter, and all such elections shall be held under the provisions of the general election law of the state. The time and place of holding such elections and the manner of appointing judges thereof and making returns of the same shall be prescribed by ordinance of such city; *provided*, that cities and towns organized under the provisions of this article may elect a mayor and such other officers as may be necessary to carry this article into effect, who shall hold office until the second Tuesday in April thereafter and until their successors are elected and qualified." R. S. 1879, sec. 4933.

The law then provides for the exercise of all necessary legislative power of an organized municipality by the mayor and board of aldermen, by ordinance, the style thereof to be, "Be it ordained- by the board of aldermen of the city of ——" and among the powers thus to be exercised was the power by ordinance to

"divide the city into not less than two wards." Sec. 4936.

The contention of plaintiff is, that when the town of Westport became a city of the fourth class and came under the provisions of this law, *eo instanti*, all the legislative power which had been vested in, and had theretofore been exercised by the "mayor and councilmen" of the town of Westport ceased, except, perhaps, the power to be implied from the proviso in sec. 4933 to order the election of "a mayor and such other officers as may be necessary to carry this article into effect" and this being true, then not only is the ordinance of the nineteenth of August, 1881, dividing the city into two wards, void, but all the ordinances passed by that body, and all the ordinances passed by the several boards of aldermen in accordance therewith, at the ensuing election in April, 1882, and annually thereafter up to and including the ordinance extending the city limits in 1891, and after, are also void, and thus all the varied legislation of a prosperous and growing city, upon the faith of which, private rights have been acquired, obligations incurred, money expended, public peace and order maintained and violators thereof punished, for a period of more than ten years, are all to be swept away at one fell swoop. The fearful consequences resulting from such a proposition might well excuse Division No. 2 of this court in *State ex rel v. Westport, supra*, on grounds of public policy, from entertaining or even entering upon the discussion of such a proposition, as an open question, in a direct proceeding by the state, at this late date; much less ought we now be disposed to do so in this collateral attack by a private individual, in view of the fact that the acts of the mayor and councilmen of the town of Westport and the acts thereafter of the several boards of aldermen of the city of Westport, in passing the several ordinances

herein attacked; are so obviously within the principle, that the acts of officers *de facto* done under color of right are valid as to the public and third persons, although they may have no right *de jure*; a well established principle that obviates the necessity of such an original inquiry.

Chief Justice BUTLER in the celebrated case of *State v. Carroll,* upon an exhaustive review of all the English and American authorities of note, lays down the following rules, among others, upon the subject: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised. *First.* Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. * * * *Third.* Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body." *State v. Carroll,* 38 Conn. 449, *loc. cit.* pp. 471, 472. The principles announced in the able and exhaustive opinion in this case have been variously applied and the case universally followed in subsequent cases, and the language of the learned chief justice has become almost a text upon the subject for subsequent law writers. Many of the cases are cited and the application of the principles thereof pointed out in 5 Am. and Eng. Encyclopædia of Law, note 1, pp. 96 to 103 inclusive, and in note 1, 1 Dillon on Mun. Corp. [4 Ed.], sec. 276. See, also, *Adams v. Lindell,* 5 Mo. App. 197, approved in 72 Mo. 192. Judge DILLON in the text to which the note is appended says: "In this country

the doctrine is everywhere declared, that the acts of *de facto officers*, as distinguished from the acts of mere usurpers, *are valid*, and the principle extends not only to municipal officers generally, but also to those composing the council, or legislative, or governing body of a municipal corporation." It would be difficult to imagine a case which could call more loudly, upon the score of justice and policy, for the application of these principles, than does the case in hand.

II.    The next contention is, that the strip of ground in question was not within the limits of Thirty-ninth street. It appears that the plaintiff owns a tract of land of about ten acres, lying across the boundaries of the extended limits of the city, six hundred and sixty-six feet of which fronting on the center line of Thirty-ninth street is within those limits, the remainder outside. The city claims that the plaintiff and his grantor dedicated the strip in question, being twenty-five feet wide off the south side of this six hundred and ten feet within the city limits, for a public highway, and the plaintiff denies such dedication. The plaintiff purchased this tract of land on the twelfth of January, 1893, from one Jacob Brown, and received a warranty deed therefor from him. In 1891 when Brown owned the tract, in a line with Thirty-ninth street, there was a road outside of the city limits along which that part of appellant's property outside of the city limits fronted, which, the county, being desirous to improve, Mr. Bell, the road overseer of Jackson county, called on Mr. Brown, who after looking over the route with the overseer, agreed to dedicate a strip twenty-five feet wide off the entire south side of the tract for the purpose of such road, and executed a written relinquishment therefor, which Bell filed in the office of the county clerk, but which afterwards could not be found for the trial. He, as road overseer, worked the strip

thus dedicated as a part of the county road outside of the city limits, and some part of it inside those limits. This work was done by him in 1891 and 1892.

The ordinance to grade Thirty-ninth street from Main street to the east city limits, a distance of one thousand, nine hundred and eighty feet, was passed June 17, 1892. The contract was let to the defendant Fielding on the first of August, 1892, at an estimated cost of $6,500. The contractor commenced work in October, 1892, and continued grading from Main street towards the city limits until he was stopped by the temporary injunction in this case, after having done about $6,000 worth of the work required to be done, including the heaviest part of the work to be done on this strip, covering two hundred and fifty feet thereof. It seems that Mr. Brown had a fence along the south line of this tract, a part of which, probably to the city limits, was removed, with his knowledge and consent, by the road overseer while he was grading the road for the county, and the remainder within the city limits was still standing on this line when the plaintiff purchased the tract. As the contractor progressed with his work, he approached the fence some time previous to the injunction, but how long does not clearly appear, and commenced filling, on, over and around it, when the plaintiff interviewed him in regard to the fence and the street and as a result of this consultation the plaintiff removed the fence to an interior line on his premises without the limits of the street.

The errors complained of on the trial of this branch of the case will be noticed in their order.

*First.* The witness Bell (the road overseer) after a proper foundation was laid testified that Brown executed the written relinquishment prepared by him, that he himself wrote, in the printed form which he

had prepared for such purposes, the description of the strip in question by metes and bounds, after examining Brown's title papers and the strip, and that Brown delivered the deed to him and he filed it with the county clerk. It is evident that the relinquishment was of the strip in question and that it could be identified by his description; it detracts nothing from the force of his evidence that he could not recollect the section in which it was situate or the few odd feet in the length of one of the lines. There was no error in the admission of this evidence.

*Second.* The court refused to permit the plaintiff to testify that he did not intend, by anything he said or did in the matter of removing his fence, to dedicate the strip to Westport, or the county of Jackson. In this the court committed no error. He was permitted to testify fully to everything he did and said in regard to the removal and as to his motive and purpose in moving it, and this was all he had a right to. *Vawter v. Hultz*, 112 Mo. 633. Upon an inquiry as to a dedication *in pais* the intent to be ascertained is not the secret intent of the owner, but that intent manifested by his acts and declarations. Elliott on Roads and Streets, p. 93.

*Third.* It is finally contended that the injunction should not have been dissolved because there was no sufficient evidence of a dedication either by the plaintiff or his grantor Brown. The evidence of a dedication by Brown is ample and complete, showing a written grant by him and acceptance and actual occupation of the premises by the public authorities for the purposes for which it was granted. The dedication was complete before plaintiff purchased the property, and while the written evidence of the grant was not upon the public records when he purchased, there was upon the very face of the premises themselves evidence from

which it must have been inferred by any reasonably prudent man; they had already been entered upon and partially worked by the county authorities as a part of the public highway; they were then being approached by the improvements being made by the contractor under the city authorities, and its grading as a part of Thirty-ninth street by those authorities was then evidently impending.  If these facts were not *then* to him sufficient notice of the dedication by his grantor, *then* was the time for him to have spoken.  The assertion comes with a faint and dubious sound into the ear of a court of equity after he had stood by for four months, seen the work progress, thousand of dollars expended, and more than six-sevenths of the whole work completed, including the heaviest part of the work in front of the premises.    The court could not but have found that there had been a valid dedication of the strip in question by Brown, and might well have found on the evidence that the plaintiff had notice of such dedication and confirmed it.   The judgment is affirmed.   All concur, except BARCLAY, J., absent.

### IN BANC.

BRACE, J.—The foregoing opinion is adopted as the opinion of the court *in banc*, all the judges concurring, except BARCLAY, J., absent.