FRANK BYAM, JR., Appellant. v. KANSAS CITY PUBLIC SERVICE COMPANY.—41 S. W. (2d) 945.

Division One, September 5, 1931.

*W. B. Kelley* for appellant.

*Watson, Gage, Ess, Groner & Barnett* and *John R. Moberly* for respondent.

HYDE, C.—This action is ejectment, the answer a general denial, a denial of appellant's title and a plea of estoppel. There is no real dispute about the material facts, most of which are shown by public records. Many years before 1891 James D. Cusenbary became the owner of the southwest quarter of Section 33, Township 50, Range 32, in Jackson County, upon which he built his home. In 1891,

Cusenbary conveyed to the Kansas City & Independence Air Line Railroad and its successors, a railroad right of way running from about the center of the south line of this quarter section in a north-westerly direction across it. There was a road or street, originally called Independence Road, later Independence Avenue, along the south side of Cusenbary's land. The south line of the southwest quarter was the center of this road. Cusenbary had established a park in the east part of the southwest quarter, near his residence, known as Cusenbary Springs Park. This park became later known as Fairmount Park. The west boundary of the park was about 350 feet east of the land conveyed to the Air Line Railroad.

In 1892 Cusenbary conveyed to the Air Line Railroad another tract of land, which was a strip on the north side of Independence Avenue, for a railroad switch into the park, to be used solely for the purpose of transporting freight and passengers to and from the park. The deed prohibited its use in the general business of the railroad or leaving freight cars standing on it, and provided that in case the park was not used for park purposes "the right of way is to be forfeited to aid first parties, their heirs or assigns." The Air Line Railroad graded this strip and constructed a double-track railroad switch from its main line into the park and used it until 1898. Then it made a lease to the Park Connecting Railway Company for a term ending October 1, 1917, giving it the right of con-necting its electric railway with the main line of the Air Line Rail-road, and operating its electric cars over the main line to the park switch and over the switch into Fairmount Park, for the purpose of transporting freight and passengers to and from the park.

The Park Railway, however, constructed a double-track electric railway from Kansas City across the main line of the Air Line Railroad and thence east, along the north side of Independence Avenue, to the old double-track switch of the Air Line Railroad, where it connected with the switch directly in front of Cusenbary's residence. From the residence to the main line of the Air Line Railroad, the new electric railroad was south of the old switch, which ran from that point in a northwesterly direction to the main line, so that from the main line to Cusenbary's residence there were four railroad tracks, instead of two, which he had to cross to get to Inde-pendence Avenue. The Park Railway permitted the Metropolitan Street Railway of Kansas City to operate its street cars from Kansas City into the park over this track. Cusenbary commenced a suit in ejectment against all three railways because of this use. The court found that the construction of the two extra tracks from the main line of the Air Line Railroad to its junction with the old switch, in front of Cusenbary's residence, and the operation of electric cars by the Metropolitan Railway constituted an additional burden on the strip, not embodied in the deed from Cusenbary to the Air Line

Railroad, which was illegal and wrongful. The court entered a decree enjoining the Park Railway and the Metropolitan Railway from operating any cars upon the double-track railway constructed by the Park Railway from the main line of the Air Line Railroad to its junction with the double-track switch or on any part of the switch unless the right to operate cars upon the railroad and switch was acquired by agreement or by condemnation. The court further ordered the railway companies to remove the railroad constructed by the Park Railway and all poles and wires along it or the switch on or before April 1, 1899, unless such rights were acquired before that time. The Park Railway did commence a condemnation proceeding and by decree therein the whole tract from Fairmount Park to the main line of the Air Line Railroad was vested in it, "its successors and assigns for the uses and purposes of a railroad right of way for a period of years ending on the first day of October, 1917," subject to the condition that freight cars should not be stored thereon.

James D. Cusenbary died in 1911. By his will he left Fairmount Park to his son and two daughters, subject to certain restrictions and a trust, of which the Fidelity Trust Company of Kansas City was trustee. A tract adjoining the park on the west, upon which the old residence stood, was conveyed by his other two children in 1913 to his daughter, Anna May Waters. This tract was described as follows:

"Beginning at a point on the south line of Section 33, Township 50, Range 32, 1,000 feet west of the southeast corner of the southwest quarter of said Section 33 (this point was the southwest corner of Fairmount Park and in the center of Independence Avenue); thence north 590 feet; thence west 319.36 feet; thence south 590 feet; thence east 317.6 feet to point of beginning."

The deed also contained the following provision: "Subject to the right of the Park Connecting Railway and Independence Avenue." One-half of Independence Avenue and all of the right of way was contained within these boundaries. Prior to his death, Cusenbary had conveyed the property between this tract and the Air Line Railroad to his other daughter.

In 1915 the three Cusenbary children, with the Fidelity Trust Company, leased Fairmount Park to the Ingersol Amusement Company for 20 years. Among other provisions, the lease contained the following:

"Fourth, the lessee shall have the right to permit street cars to and from Kansas City, Missouri, to be run into said premises, but shall not have the right to permit street cars to run beyond the points to which railroad tracks have already been laid on the premises, nor so as to be a means of passage through said premises by street

cars, and the railroad tracks used by such street cars shall not be used or be permitted to be used for the purpose of transporting any freight except supplies brought into said park by the lessee for use in running and maintaining said park.''

The Kansas City Southern Railroad is the successor of the Air Line Railroad. Respondent is the successor of the Park Railway, the Metropolitan Railway and the Kansas City Railways Company. After October 1, 1917, and until the commencement of this action May 14, 1925, respondent and its predecessors continued to operate electric cars into Fairmount Park without any objection by or any renewal of its lease from the Kansas City Southern and without any objection by Mrs. Waters or the other Cusenbary children. On May 31, 1924, Mrs. Waters conveyed to appellant the land, adjoining Fairmount Park, which her brother and sister had conveyed to her. The description of the property in the deed to appellant was the same as in her deed and contained the provision: ''Subject to the right of way of the Park Connecting Railway and Independence Avenue.''

Appellant subdivided this tract into lots, filed a plat July 3, 1924, duly executed and acknowledged, in the office of the Recorder of Deeds of Jackson County, and sold lots shown in the plat. In this plat, after the description contained in his deed, the following statement appeared: ''Except that part taken for the right of way of the Kansas City Railways Company.'' The plat also stated:

''The undersigned proprietors of the above described tract of land have caused the same to be subdivided in the manner shown on the accompanying plat, which plat and subdivisions shall hereafter be known as 'Cusenbary Homestead.' The streets shown on this plat and not heretofore dedicated to public use as thoroughfares are hereby so dedicated.''

The plat itself is as follows:

A jury was waived and the case was tried before the court. The court, of its own motion, filed an opinion setting out a summary of the above facts and holding that appellant, "by platting the land and selling lots in accordance with the plat which contained the recital 'except that part taken for the right of way of the Kansas City Railways Company,' must be held to have dedicated the part thus excepted to the use of said Railways Company. . . . Plain-

tiff took title subject to the right of way of the Railways Company and by his plat and sale of lots in accordance therewith he must be held to have rededicated the strip of land occupied by such right of way to that use.'' Judgment was entered dismissing appellant's petition, from which he appealed. The court's decision was on the authority of Kansas City & Northern Connecting Railroad Co. v. Baker, 183 Mo. 312, 82 S. W. 85.

Appellant makes no formal assignment of errors in his brief. This court has, however, held that ''where appellant, though making no formal collective assignment of errors in any given part of his brief, yet separately assigns errors specifically in distinct subheads of his points and authorities, we will accept this as a substantial compliance with the statute and our rules.'' [Kirkland v. Bixby, 282 Mo. 462, 222 S. W. 462; St. Louis v. Missouri Pac. Ry. Co., 278 Mo. 205, 211 S. W. 671.] Following these decisions, we will consider the errors complained of under appellant's points and authorities. Appellant contends that the trial court was wrong in holding that the plat filed by appellant was a rededication of the right of way and holding that appellant was not entitled to eject respondent therefrom.

In Kansas City & Northern Connecting Railroad Co. v. Baker, 183 Mo. 1. c. 322, this court said:

''The execution and recording of the plat of the town of Osborn in 1858, was a dedication of the parallelogram thereon marked 'Reserved for Depot Grounds,' to the Hannibal & St. Joseph Railroad Company for railroad purposes.''

This court there held that, under our Constitution and statutes, the use of the land by the railroad was an appropriation of it to a public use. The constitutional provision referred to, Section 14, Article 12, provides: ''Railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and railroad companies common carriers.'' This provision is carried into our statutes, Section 4786 and Section 4791, Revised Statutes Mo. 1929. It is, of course, not to be strictly construed so as to exempt railroad right of ways from taxation or throw them open as thoroughfares. [Heman Construction Co. v. Wabash Railroad Co., 206 Mo. 172; City of Nevada v. Eddy, 123 Mo. 546.] The tenure of the railroad corporation is in the nature of a trust for the public use, subject to the supervision of the government, whether obtained by dedication or eminent domain. [Venable v. Wabash Railway Co., 112 Mo. 103, 20 S. W. 493.]

Appellant cites cases from other states to support his contention that the filing of the plat was not a dedication of the right of way. These are inapplicable under our Constitution. The general rule is stated in 18 Corpus Juris, page 49, Section 28:

"A railroad company, although a quasi-public corporation, cannot take by dedication except under statutes allowing dedications to individuals and corporations. It may, however, acquire rights of way and rights for its depots by statutory dedication. In some cases analogous rights have been held to have been acquired by railroads through estoppel."

Kansas City & Northern Connecting Railroad Co. v. Baker, 183 Mo. l. c. 322, holds that under our Constitution and statutes land can be dedicated to a railroad by plat and that the railroad has a right to accept such dedication. This case has been since accepted as authority. [See 'Otterville v. Bente, 240 Mo. 291, 144 S. W. 822; Laddonia v. Day, 265 Mo. 383, l. c. 391, 178 S. W. 741; Summers v. A. T. & S. F. Ry. Co., 2 Fed. (2d) 717, l. c. 719.] We are satisfied with the principles it establishes. This being the rule, it remains for us to determine the meaning and effect of this plat. Appellant says that the effect of the clause in his plat "except that part taken for right of way" was to entirely exclude that tract from the plat and that it was no part of the plat. He claims the case of Kansas City & Northern Connecting Railroad Co. v. Baker is not applicable here because the designation on that plat was "reserved for depot grounds" which, he says, made the tract a part of the plat. This question must be decided in the light of the circumstances of this case. It may be noted that our statutes in regard to plats, Section 11180, Revised Statutes 1929, provides that plats shall set forth and describe:

"First, all parcels of ground . . . reserved for public purposes by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons or other public uses."

Where there is not a complete statutory dedication the sale of lots by reference to the plat constitutes a common law dedication. [Kansas City & Northern Connecting Railroad Co. v. Baker, 183 Mo. l. c. 322; Otterville v. Bente, 240 Mo. 291, 144 S. W. 822.] General principles for the interpretations of plats have been stated as follows:

"Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the party may be ascertained, and every part of the instrument be given effect; no part of the plats are to be rejected as meaningless, if it can be avoided; and lines as well as words are to be considered. All doubts as to the meaning of the plat and any conflict on its face will be construed most strongly against the dedicator." [18 C. J. 109, sec. 127.]

"In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against

him; but the plat should be considered as a whole, and the maker's real intention sought therefrom. Sometimes the intention to dedicate is unequivocally indicated, as where parts of a tract are left without subdivision by the original owners and marked on the plat as 'public ground,' or, as 'not to be occupied with buildings of any description,' or, as 'public grounds.' So also, where words and markings commonly indicative of a public use are used they will ordinarily be taken as setting apart the area so designated for the benefit of the public, though no boundary is delineated." [8 R. C. L. 896, sec. 20.]

The situation at the time appellant purchased the tract was as follows: Respondent's lease had expired October 1, 1917, as did its rights acquired by condemnation to maintain the track from the Kansas City Southern main line to the junction with the double-track switch and to operate electric cars over the track and switch. The Kansas City Southern was the owner of the right of way to the park so long as it was used for park purposes. The Kansas City Southern, alone, had the right to object to respondent using it after the expiration of its lease (Kansas City & Northern Connecting Railroad Co. v. Baker, 183 Mo. l. c. 325), except that the Cusenbary heirs had the right, when respondent's rights acquired by condemnation expired October 1, 1917, to prevent that use of the land which imposed an additional burden upon it, just as their father had that right originally. They could have maintained an eject-ment suit, just as he did, provided they had done nothing to waive that right. However, the Cusenbary heirs, including appellant's grantor, prior to October 1, 1917, made a lease of the park which would not expire until many years after October 1, 1917. This lease expressly granted the right to have street cars run into the park from Kansas City. It limited the right, to park purposes only, as the elder Cusenbary had done in all of his deeds. Since the Cusenbarys, at the time they made the lease, owned all of the land between Fairmount Park and the Kansas City Southern Railway, it is evident that they meant, by provision in the lease, to permit the street cars to continue to run to and from the park through their land. When Mrs. Waters conveyed the land to appellant, it was conveyed subject to the railroad right of way. The lease and the former deeds were all of record. Appellant testified that he had an abstract made to the land and had it examined before he purchased it. With knowledge of all these facts he filed his plat, not only noting in the description of the subdivision "except that part taken for the right of way of the Kansas City Railways Company," but also showing on the map (herein above reproduced) the strip, occupied by the tracks, drawn through the land subdivided and across the public streets shown thereon, marked "Right of Way,

K. C. Rys. Co." If we follow the contention of appellant to its logical conclusion, there is a tract, about thirty feet square, taken out of Hardy Street and another taken out of Poplar Avenue and reserved for appellant's use and excluded from the plat by the exception, from the description, of the railway right of way. This demonstrates its fallacy. It seems to us that the facts and circumstances here show dedication, just as conclusively as in Kansas City & Northern Connecting Railroad Co. v. Baker. We fail to see any reason for a distinction, under these circumstances, except that appellant's dedication of the right of way might be held to be only for park transportation purposes rather than for all purposes and for all time.

Furthermore, we think that the facts here show a common law dedication by appellant's grantor, in executing the lease to Fairmount Park upon the condition of street car service, and in acquiescence in the use of the right of way by respondent, for the purpose of giving the street car service to the park, which she contracted it was to have. Implied or common law dedication operates upon the principle of an estoppel. [18 C. J. 38 and 110; 8 R. C. L. 906; Rutherford v. Taylor, 38 Mo. 315; Perkins v. Fielding, 119 Mo. 149, 24 S. W. 444; Richards v. Public Service Commission, 293 Mo. 625, 239 S. W. 838.] From the time the park was established her father had arranged for railway transportation of freight and passengers to and from the park. The lease signed by Mrs. Waters provided for a rental, increasing in amount with each 5-year period, finally becoming $15,000 annually. Undoubtedly they could not have made such a valuable lease if they had not made provision for street car service. This lease was put on record and respondent and the public were entitled to rely upon it. Respondent did maintain the line and continue the service after October 1, 1917. Mrs. Waters did acquiesce in its continuance. She not only did that but she recognized the company's rights, in her deed to appellant, by making her conveyance subject to its right of way. Meanwhile, the district near the park was built up and subdivided. It changed from a rural to an urban district. Appellant lived nearby for many years and knew of these facts.

This court said, in Richards v. Public Service Commission, 293 Mo. l. c. 633, in holding that the part of a switch track on private property, constructed from the main line of a railroad to a private plant across public streets, was dedicated to public use:

"It is said: the intention of the owner to set apart his lands for the use of the public is the foundation and life of every dedication, and only when this intention is unequivocally manifested can a dedication be found to exist. . . . Such purpose, however, is to be gathered from the open and visible conduct of the

owner, and it sometimes happens that his acts and declaration clearly evince an intention to dedicate lands to a public use when in fact he has no real intention of doing so. In such case if individuals and the public act upon the owner's intention as so manifested, he is precluded from resuming his right of private property over the land, if his so doing would operate as a fraud upon them."

Likewise, in Perkins v. Fielding, 119 Mo. 1. c. 162, this court said: "Upon an inquiry as to a dedication *in pais* the intent to be ascertained is not the secret intent of the owner, but that intent manifested by his acts and declarations."

In Second Street Improvement Co. v. K. C. Southern Ry. Co., 255 Mo. 519, 164 S. W. 515, this court held that a landowner, who stood by and saw a railroad company use a strip of land for a long time after a lease thereon had expired, during which time the company condemned adjoining land and went to other expense, lost his right to maintain ejectment even though he might be entitled to recover damages for the appropriation of the land. The court said: "Cases of this kind stand upon a little different footing from cases where pure individual rights are involved. The public service is a proper matter for consideration in a way. Public service by a common carrier might be brought to naught, if an individual could eject it from an eight-foot strip across its right of way, at a point along its line midway between the two ends. . . .

"The facts in this case estop the plaintiff from claiming the land in kind. Giving the lease the full force for which the plaintiff contends, yet the plaintiff for some years after its expiration stood by and saw the defendant use the property, and later permitted it to go to the expense and trouble of condemning lands on the other side of it. These and the other facts in the record heretofore detailed authorized the judgment *nisi*."

The court also said, quoting from Provolt v. Railway, 57 Mo. 1. c. 262:

" 'In these great public works the shortest period of clear acquiescence, so as to fairly lead the company to infer that the party intends to waive his claim for present payment, will be held to conclude the right to assert the claim in any such form as to the company in the progress of their works, and especially to stop the running of the road after it has been put in operation, whereby the public acquire an important interest in its continuance.' "

This rule is restated and approved in Idalia Realty & Development Company v. Norman's Southeastern Railway Co., 219 S. W. 923. Appellant bought with notice and it is fundamental that his title can be no better than that of his grantor. Appellant cites Laughlin v. Wells, 314 Mo. 474, 283 S. W. 990. But in that case a street car company took possession and operated under a written lease. The lessor gave notice to terminate the lease in accordance

with its terms. .. There was no acquiescence in anything not provided for by the lease. No estoppel or dedication was even pleaded. The court held that the parties were bound by the contract they made.

We are satisfied that by reason of the circumstances above set out Mrs. Waters could not have maintained an ejectment suit against respondent, and appellant, for that reason, as well as because of his own acts, cannot. We have hereinabove noted that the original deed to the Air Line Railway only granted the right of way so long as the original park should be used for park purposes and that the Cusenbarys were at all times careful not to enlarge that grant. What the rights of the parties would be in case the land, embraced in Fairmount Park, is no longer used for park purposes, however, is not here in issue, and we do not decide that question.

Appellant complains that the trial court should have admitted his testimony as to what his intentions were, as to dedications, in filing the plat. He also says that the court should have admitted his testimony as to the intentions and statements of appellant's grantor at the time he purchased the land. Appellant was asked if he had any conversation with Mrs. Waters as to the right of the Street Railway Company when he bought the land. His answer was, "No, she talked to me." Objection was then made to any such conversation, which was sustained. No further question was asked and no offer of proof made. Upon cross-examination appellant volunteered the statement that he bought the land with the understanding that Mrs. Waters had an interest in the right of way. The court then questioned him about this understanding and he made the following answer:

"My understanding was that Mrs. Waters did not want to bring any action against the Railroad Company because they owned the property east of there, they owned Fairmount Park, and they was supposed to give me a deed to it, subject to the right of way of the Railway Company, whatever they might have there."

Upon further questioning by the court as to what understanding he was talking about, he answered: "Well, just the general understanding that there was a right of way there that went with the title to the land." The court thereupon struck out this testimony. It will be seen from these answers that the understanding which appellant was testifying about was that he should get the land subject to the right of way of the Railway Company, which was what his deed said. Upon re-direct examination, appellant's counsel asked him if Mrs. Waters, at the time he paid for the land, said anything regarding the rights of the company to occupy the tract. Respondent's objection to this conversation was sustained. As before, there was no further question nor offer of proof. We are

therefore entirely in the dark as to what appellant expected to testify, except as was shown by his answers to the court's questions.

Before there is anything to review on appeal on exclusion of evidence "a proper question must be asked, and, on objection thereto, an offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all facts necessary to establish its admissibility (3. C. J. 825, sec. 736). [Gary v. Averill, 321 Mo. 840, 12 S. W. (2d) 747; McGuire v. Amyx, 317 Mo. 1061, 297 S. W. 968; Lynes v. Holt, 1 S. W. (2d) 121; Cardinale v. Kemp, 309 Mo. 241, 274 S. W. 437.] Furthermore, so far as the record shows as to what appellant would testify, its exclusion, if it could have been admissible upon any theory, was not prejudicial. It was immaterial, since the verbal understanding was exactly what his deed, already in evidence, provided.

Appellant's final contention is that the court erred in admitting in evidence the lease of Fairmount Park made by the Cusenbary heirs. What we have said about this lease shows that it was matrial and properly admitted.

The judgment is therefore affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.