**FORT OSAGE DRAINAGE DISTRICT OF JACKSON COUNTY, Missouri, Appellant,**

v.

**JACKSON COUNTY, Missouri, Respondent.**

**No. 44270.**

Supreme Court of Missouri.

Division No. 1.

Feb. 14, 1955.

·William R. Moore, Walter A. Raymond, Kansas City, for appellant.

Hilary ·A. Bush, Kansas City, J. Marcus Kirtley, Independence, for respondent. Rufus Burrus, Independence, of counsel.

VAN OSDOL, Commissioner.

This is an action instituted June 26, 1950, by Fort Osage Drainage District of Jackson County (organized under statutes now Section 242.010 et seq. RSMo 1949, V.A.M. S.), plaintiff, against Jackson County, defendant, to collect a maintenance tax levied against assessed benefits to defendant

County's public highways within the confines of the district. The action was brought for the amount of the tax, $2,000, penalty, costs and attorney's fee. Defendant County by answer alleged the levy was illegal and void because the tax, it was alleged, was not levied by a legally constituted taxing authority and in manner required by law. The trial court found for defendant and dismissed plaintiff's petition. Plaintiff has appealed.

■ This court has appellate jurisdiction of the case on the ground that defendant, a county, is a party. Fort Osage Drainage Dist. of Jackson County v. Jackson County, Mo.App., 264 S.W.2d 792; Const., Art. V, Section 3, V.A.M.S.

At the conclusion of the trial of the cause, the parties requested findings of fact and conclusions of law.

The trial court gave Conclusions of Law Nos. 1, 2, 3, and 4 at the request of plaintiff, as follows,

"1. The Court has jurisdiction of the subject matter and of the parties. 2. The assessment sued for in this suit was not four years or more delinquent at the time of the institution of this suit nor at the time of the trial and the Land Tax Collection Act (Sections 141.210 to 141.810, RSMo 1949, V.A.M.S.) is therefore not applicable. 3. Defendant * * * is not subject to suit under the Land Tax Collection Act. 4. The suit was properly brought in the name of the Fort Osage Drainage District as provided by Sections 245.220 and 245.225, RSMo 1949, V.A.M.S., and is legally pending in this Court for disposition on the merits."

The trial court gave Conclusions of Law, submitted by defendant, as follows,

"3. That the purported Board of Supervisors acting on and after 1st September, 1949 was not a lawfully constituted taxing authority, which could levy a valid and lawful tax. 4. That the purported Board of Supervisors acting on and after 27th day of January, 1950, were not legally and lawfully elected, and that the election purportedly held January 25, 1950 was null and void and of no force or effect. 5. That the suit here pending was not instituted at the instance and direction of a legally constituted authority. 6. That the petition in this suit ought to be and is hereby dismissed, at the cost of plaintiff."

Plaintiff-appellant contends the members of the board of supervisors, who were acting in making the levy and who were acting in directing the institution of this action, were *de jure* officers or, in any event, they were officers *de facto*. Plaintiff-appellant asserts that introduction of the tax bill into evidence made out a prima facie case for plaintiff; that the tax bill was prima facie evidence of the validity of the tax; and that defendant did not sustain the burden of proving invalidity. Plaintiff-appellant also says defendant's answer alleging the invalidity of the tax levy in this action to recover judgment for the tax constitutes a collateral attack. Defendant-respondent County, on the other hand, contends that its defense is permissible and does not constitute a collateral attack but is a direct attack made at the first opportunity and by the only method provided by law; and that the tax levy was void because made by usurpers or interlopers. Defendant-respondent also asserts the action has not been brought by a proper party plaintiff—it is said the action should have been brought in the name of the County Collector under the Land Tax Collection Law, Section 141.210, et seq. RSMo 1949, V.A.M.S.

■ In this action at law tried without the services of a jury, we review the case upon both the law and the evidence as in actions of an equitable nature, even though the trial court at the parties' request made findings of fact and gave conclusions of law. Faire v. Burke, 363 Mo. 562, 252 S.W. 2d 289; Pudiwitr v. Soloman, Mo.App., 224 S.W.2d 562; Section 510.310 RSMo 1949, V.A.M.S. In this case the evidence was largely documentary, and there was no conflict in the verbal evidence introduced which

would require our due regard for the better opportunity of the trial court to judge the credibility of the witnesses.

A drainage district is a public corporation. It is not a municipal corporation in the restricted sense of the term. Its purpose is to exercise governmental functions. Although, the courts must follow the provisions of the statutes governing drainage districts, these statutes are " 'declared to be remedial in character and purpose, and shall be liberally construed by the courts in carrying out this legislative intent and purpose.' " Graves v. Little Tarkio Drainage Dist. No. 1, 345 Mo. 557, 134 S.W. 2d 70, 76; Section 242.690 RSMo 1949, V.A.M.S.

Plaintiff District had the statutory power to levy the tax in question through District's board of supervisors. Section 242.490 RSMo 1949, V.A.M.S. Actions may be brought, on delinquent district tax bills within six months after delinquency, by a district *in its corporate name* and a judgment rendered for the delinquent taxes and penalty, including costs, and a reasonable attorney's fee to be fixed by the court. Section 242.600 RSMo 1949, V.A.M.S. Section 242.590 RSMo 1949, V.A.M.S., and Section 242.600, supra, provide that upon certification filed in the office of the recorder of deeds, the drainage tax shall constitute a lien. Although such a lien is unenforceable as against public highways, yet a drainage district may resort to an appropriate common-law remedy to recover the tax, penalty, and costs including an attorney's fee, usually an action seeking a general judgment, against the political or governmental subdivision of the State chargeable with the maintenance of the public roads and highways—in the instant case, defendant County. Platte River Drainage Dist. No. 1 of Buchanan County v. Andrew County, Mo.Sup., 278 S.W. 387; Harrison and Mercer County Drainage Dist. v. Trail Creek Tp., 317 Mo. 933, 297 S.W. 1. See also Drainage Dist. No. 1 of Bates County v. Bates County, 269 Mo. 78, 189 S.W. 1176; Id., Mo., 216 S.W. 949, treating with the County Court Drainage Law, now Section 243.010 et seq. RSMo 1949, V.A.M.S.

This brings us to defendant-respondent's contention that this action should have been instituted by the county collector under the provisions of the Land Tax Collection Law, Section 141.210 et seq., supra. Inasmuch as the tax on defendant's public highways is not enforceable as a lien, we think it is manifest that the provisions of the Land Tax Collection Law are not applicable to this action brought to recover a general judgment against defendant County. In Spitcaufsky v. Hatten, 353 Mo. 94, 182 S.W.2d 86, 160 A.L.R. 990, an exhaustive opinion, the purposes of the Land Tax Collection Law were discussed, and it was said that the Law was designed as an *"in rem"* proceeding, a proceeding against the land (as distinguished from an action for a general [personal] judgment) with the view of summarily foreclosing the liens of long-outstanding delinquent taxes. See also Collector of Revenue of Jackson County v. Parcels of Land Encumbered with Delinquent Taxes, 362 Mo. 1054, 247 S.W.2d 83. We believe the trial court correctly held the provisions of the Land Tax Collection Law were not applicable to this action.

In the trial of the instant case, plaintiff District introduced into evidence the tax book of District showing the tax levied for the year 1949 against benefits to property within the district, including the levy of $2,000 against the property of County within the confines of the district. The amount, $2,000, was the equivalent of ten percent of the benefits assessed against defendant's property. The tax bill was also introduced, as was a written notice of the institution of the action, which notice disclosed that it had been filed in the office of the Recorder of Deeds of Jackson County on the day the action was instituted, June 26, 1950.

Defendant introduced such of the minutes of the meetings of the owners of real estate and of the acting boards of supervisors of District as were in the custody of the presently acting secretary of District. The acting secretary, Emil Borgman, purportedly

elected August 19, 1949, succeeding C. A. Winfrey, was not sure he had in his custody all of the records of the District. The predecessor acting secretary was ill and did not testify.

According to the minutes of a meeting of January 22, 1949, attended by all of the acting supervisors, the levy of a tax of ten percent was authorized for the year 1949 against the benefits to lands in the District. During the year 1949, George H. Stephens, John Stephens, Roger Mershon, Emory Mershon and C. A. Johnson (C. A. Johnson was succeeded during the year by W. E. Johnson) acted as supervisors and transacted the business of plaintiff District. The minutes of a meeting of the acting supervisors as of September 1, 1949, disclose that the tax as levied was certified to Collector of Revenue of Jackson County on that date. All of the supervisors who were acting on September 1, 1949, thereafter resigned as of 12:00 o'clock noon January 25, 1950; and at 2:00 o'clock in the afternoon of the same day the same persons (George H. Stephens, John Stephens, Roger Mershon, Emory Mershon and W. E. Johnson) were re-elected supervisors by the landowners of the district at a meeting, notice of which had been published. The minutes further disclose the supervisors met May 20, 1950, at which meeting notices were ordered sent to delinquent taxpayers, and a letter was ordered to be sent to the attorney for District directing him to institute actions on all delinquent taxes.

■ So far as the minutes show, the only landowners' meetings held in the District were for the years 1919, 1927, 1928, 1929, 1930, 1931 and 1950. And, so far as the minutes show, of these seven landowners' meetings, notices of meetings were given of the meetings of 1919, 1931, and 1950, only. However, the minutes show that the board of supervisors acting during prior years (and during the years 1949 and 1950, when the disputed tax was levied and when this action was instituted) or their acting predecessors had transacted District's business through the years. They had levied taxes for former years. They had incurred and satisfied obligations of the District. They had entered into contracts for maintenance of District's improvements. No others were purportedly acting as District's board of supervisors. The whole of the records of District as introduced into evidence demonstrate a situation quite as conceded by plaintiff District through its counsel in open court, as follows,

"If it will help matters any I am willing to make this statement, that as a matter of fact there were some of the Board of Supervisors that were elected by other members of the Board of Supervisors, as the Statute provides (Section 242.160 RSMo 1949, V.A.M.S.) where a vacancy occurred, the Statute provides that this vacancy shall be filled by a supervisor elected by the remaining members of the Board to hold office until the next annual meeting, (Section 242.160, supra), the last ones; that some of those supervisors who were elected by the other members of the Board continued to hold office as supervisors beyond the time when the annual meeting of the land owners should have been held but which was not held; they continued to function as supervisors."

Of course, there is substantial support for the conclusion that annual meetings of the owners of real estate were not regularly held; and, as stated, the minutes and other records of District do not show that due publication of notice of some of the landowners' meetings was made in accordance with statute. (A statutory proceeding is provided by Sections 242.170 and 245.065 RSMo 1949, V.A.M.S., and made available to any person or persons interested if it is made to appear that any landowners' meeting for the election of the members of the board of supervisors was improperly called or that the notice of such meeting was for any reason insufficient.) It may be also readily inferred from the record, as conceded by plaintiff's counsel, that members of the acting board continued to hold over and act as supervisors although they or their successors should and would have been re-elected or elected at annual meet-

ings of the landowners, some of which meetings in so far as the minutes show were not held as required by statute. It may be that the acting members of the board of supervisors (at the time the levy was made and at the time the board ordered the institution of this action) were not "lawfully and legally elected", as the trial court found, at least not lawfully and legally elected by the landowners at regular annual meetings of which notice had been duly published. Section 242.150 RSMo 1949, V.A.M.S., and Section 242.160, supra. Nevertheless, the members of the board purportedly elected at the meeting of January 25, 1950, could not be said to be interlopers or usurpers. They, as stated, were elected by the landowners of the District at the meeting of January 25th of which notice had been given; and prior to the January 25th meeting they or others had been elected by the other acting members of the board or had held over until they themselves were purportedly re-elected or others, successors, were purportedly elected by the landowners or by other acting members. As stated, these acting supervisors through the years had acted in the transaction of the business of District without question as to their authority to so act. The trial court expressly found and was justified in finding that no landowner in any landowners' meeting or in any meeting of the board has ever raised any question of the authority of the board or any member thereof to act, or otherwise question the validity of the acts of the board. In all appearances they were supervisors. They were claiming to act and were recognized as supervisors, an office recognized by law. In not all cases must officers be "legally and lawfully" elected in order to validly perform an official function.

An officer who holds over after the expiration of his term under some color of right, no successor having been appointed or chosen, and continues to exercise the functions of the office is said to be a *de facto* officer; likewise, when he acts under color of a known election which is void for want of power of the electing body or because of some irregularity in its exercise unknown to the public. Although his title may be bad, his acts for reasons of public policy are valid so far as they concern the public or third persons. State ex rel. City of Republic v. Smith, 345 Mo. 1158, 139 S.W.2d 929; State ex rel. City of Clarence v. Drain, 335 Mo. 741, 73 S.W.2d 804; Perkins v. Fielding, 119 Mo. 149, 24 S.W. 444; Id., 119 Mo. 149, 27 S.W. 1100; Vol. 3, McQuillin, Municipal Corporations, 3rd Ed., §§ 12.102–12.106, pp. 376–387. Therefore, it would seem that in this case, since the acts of District's board in levying the tax and in directing the institution of this action were the acts of *de facto* officers, the validity of their acts in levying the tax and plaintiff's maintenance of this action may not be questioned on the ground that the supervisors, in making the levy or in directing the institution of the action, were not legally and lawfully elected. State ex rel. City of Republic v. Smith, supra; Kansas City v. McTernan, 308 Mo. 494, 273 S.W. 105; Perkins v. Fielding, supra.

The judgment of dismissal should be reversed and the cause remanded with directions to render judgment for plaintiff and against defendant for the amount of the tax, $2,000, and penalty—the judgment to also include costs of the action and a reasonable attorney's fee to be fixed by the trial court.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.