HOWARD HARBAUGH, Plaintiff in Error, *v.* EDWARD WINSOR AND MARQUIS W. WITHERS, Defendants in Error.

1. *Officer de facto—Authority.*—The acts of an officer *de facto*, although his title may be bad, are valid so far as they concern the public, or the rights of third persons who have an interest in the things done. Official acts cannot be impeached collaterally.

2. *Courts.*—A writ of summons issed by a person claiming the office and performing the duties of a clerk of a court, is a valid writ. The want of title in the clerk *de facto* is no cause for quashing the writ.

*Error to Lafayette Circuit Court.*

*Ryland & Son*, for plaintiff in error.

I. The question before the Circuit Court involved the simple fact, whether R. C. Vaughan, on the 3d of July, 1865, was acting and discharging the duties of the office of clerk of the Circuit Court of Lafayette county; whether he was clerk *de facto* of said court.

II. The acts of officers *de facto* are as valid, so far as the public is concerned, as though they were officers *de jure ;* so are they with third persons.

"An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law "—Ld. Ellenborough, in The King v. Corporation of Bedford, 6 East, 369. R. C. Vaughan was and had been the acting and legal clerk of one Circuit Court from May, 1862, up to May, 1865. He was appointed clerk *pro tempore* on the 22d of May, 1865. He was in the office, and doing the work and performing the duties of clerk of the court up to the 10th of July, 1865. On July 3, 1865, he, as clerk, issued the writ in this case. Can there be a doubt of the legality of this act of Vaughan? No principle is better settled than that the acts of an officer *de facto* are valid when they concern the public or third persons, when they have an interest in the thing done—Knight v. Corporation of Wells, Lutw. 508–19 ; People v. Collins, 7 Johns. 549 ; McKinstry v. Tanner, 9 Johns. 135 ; Wilcox v. Smith, 5 Wend. 231 ;

People v. Bartlet, 6 id. 422; People v. White, 24 id. 539, 540. An officer *de facto* is one who comes into a legal and constitutional office by color of legal appointment or election to that office; and as the duties of the office must be discharged by some one, for the benefit of the public, the law does not require third persons, at their peril, to ascertain whether such officer has been properly elected or appointed, before they submit themselves to his authority, or call upon him to perform official acts which it is necessary should be performed—People v. Covert, 1 Hill, 674; Buckman v. Ruggles, 15 Mass. 180; Bond v. Bk. of Washington, 11 Serg. & Rawl. 411; Cocke v. Halsey, 16 Pet. 85; 14 Curt. Cond. R. 189; People v. Hopson, 1 Denio, 579; People v. Stephens, 5 Hill, 630; Green v. Burke, 23 Wend. 490; Taylor v. Skrine, 2 Const. R. (S. C.) 606. These cases show that the doctrine is well settled, that the acts of an officer *de facto*, though his title may be bad, are valid, so far as they concern the public, or the rights of third persons who have an interest in the things done. A person, by color of election, may be an officer *de facto*, though undisputably ineligible, or though the office was not vacant, but there was an existing office *de jure* at the time—Angell & Ames on Corp. §§ 286, 287; O'Brian v. Kirwan, Cro. Jac. 552; Harris v. Jays, Cro. E. 699; 4 Gill. (Md.) 437; Smith v. Erb, 2 Cush. (Miss ) 39; 21 Penn. 131; 36 Me. 78; 37 Me. 587; 8 Dana, 115; 25 Ala. 566; 6 Conn. 428; 6 East, 368–9.

The case of Cocke v. Halsey, 16 Pet. 85, is directly in point; and the doctrine there laid down by the Supreme Court of the United States clearly shows that the court below erred in quashing the writ in this suit.

*W. Adams*, for defendants in error.

After the ousting ordinance took effect, and after the appointment of Currie and his acceptance of the office of clerk, Vaughan was not a *de facto* officer, but was a mere intruder, without any color of right, and his acts were utterly void. At the time the supposed writ was issued, Currie

was the clerk *de facto*, as well as *de jure*, and Vaughan was a stranger—a mere trespasser, and might have been thrown out by Currie by force of arms.

WAGNER, Judge, delivered the opinion of the court.

The plaintiff in error brought his action in the Circuit Court of Lafayette county, against the defendants. The petition contained two counts. The first count charged that the defendants, on the 5th day of July, 1860, did, with great force and violence, enter into the printing office of plaintiff, in the county of Lafayette, which printing office was then and there in the lawful and peaceable possession of the plaintiff; and said defendants then and there violently, tumultuously, and with great force and violence, seized, took and carried off and destroyed the newspaper called the Citizens' Public Advertiser, the property of the plaintiff; and ordered, and forced, and compelled the plaintiff to leave and abandon his said printing office, and to seek safety for his life by flight; by which he was greatly injured by the acts of the defendants, and sustained damages in the sum of two thousand dollars, for which he asked judgment.

The second count in the petition alleged that defendants did, with force and arms, enter into the printing office of the plaintiff, in possession at the time of the plaintiff, and did violently, unlawfully, tumultuously, and against the peace of the State, seize, take, destroy and tear to pieces the last impression of said newspaper, just then printed and ready for delivery; and then and there forced, ordered and compelled the plaintiff to save himself by flight; to his damage in the sum of two thousand dollars, for which he asked judgment.

The petition was filed in the office of the circuit clerk of Lafayette county, on the 3d day of July, 1865, and summons was duly issued and served on the defendants the same day. At the term of the Circuit Court to which the writ was made returnable, the defendants appeared by their attorney, and moved the court to quash the writ and strike the petition

from the files of the court, because the said writ was not issued by an officer or any one having authority to issue the same, and the petition was not filed with any officer having authority to file the same, or to issue a writ thereon. This motion was sustained by the court, and the plaintiff excepted and sued out his writ of error.

The record shows that when the petition was filed, the clerk's office was in possession of Richard C. Vaughan, together with all the books, papers, furniture, &c., appertaining thereto. Vaughan was appointed to the office in May, 1862, and continued to hold and discharge the duties of the same up to July 10, 1865. By an ordinance*passed by the Constitutional Convention, on the 17th day of March, 1865, the offices of the circuit clerks in the State were declared vacant on the first day of May, 1865, and the Governor was authorized to fill the vacancies by appointment. In pursuance of the power vested in him by the ordinance, the Governor appointed and commissioned S. F. Currie to be circuit clerk in Lafayette county, who regularly qualified and gave bond as such. Vaughan disputed the validity of the ordinance, and refused to vacate the office. Pending the controversy between the respective contestants for the office, the court, at its May session, appointed Vaughan clerk *pro tempore*, who continued in possession, exercising its functions, till the 10th of July ensuing, when he delivered it up to Currie.

The counsel on both sides in this court admit the legality and binding force of the vacating ordinance, and the only question to be determined is, the effect which is to be attached to the official acts of Vaughan, while exercising the functions of clerk after the 1st of May. The distinction between an officer *de facto* and an officer *de jure* is well established, and is of ancient origin. It is said in the case of Parker v. Kett, 1 Ld. Raym. 660, that an officer *de facto* is one who has the reputation of being an officer, and yet is not a good officer in point of law ; and this definition is quoted and approved by Ld. Ellenborough, in The King v. Corporation

of Bedford, 6 East, 368. A person may be disqualified and ineligible to hold an office, yet he will be *de facto* an officer, and his acts, until his removal, will be valid as to third persons—St. Louis Co. Court v. Sparks, 10 Mo. 117 ; Knight v. Corporation of Wells, 1 Lutw. 509, 519. And where an appointment is regularly made, it is a colorable authority for the appointee, and renders him, while exercising the functions of the office, an officer *de facto*—The People v. Cook, 4 Seld. 67. It is an established principle of the common law, well settled by a long and consistent series of decisions, that the acts of an officer *de facto*, though his title may be bad, are valid as far as they concern the public, or the rights of third persons who have an interest in the things done— The People v. Hopson, 1 Denio, 579 ; Cocke v. Halsey, 16 Pet. 71 ; People v. Stevens, 5 Hill, 616 ; McKinstry v. Tanner, 9 Johns. 549 ; Wilcox v. Smith, 5 Wend. 231 ; 4 Term R. 366 ; 17 Vin. Abr. 114. The doctrine that the acts of an officer *de facto* are valid extends only to prevent mischief to such as confide in officers who are acting without right. The office is void as to the officer himself, though valid' as to strangers—7 Johns. 549 ; 7 Serg. & Rawle, 386 ; 10 id. 249 ; 2 Rawle, 139, 140 ; 9 Mass. 231.

The rule imparting validity to the acts of a *de facto* officer is indispensably necessary to prevent the failure of justice. The business of the community could not be transacted without it; irreparable wrong would result from any other doctrine. The public are necessarily compelled to do business with an officer who is exercising the duties and privileges of an officer under color of right, and to say that his acts as to strangers should be void, would be gross injustice. It would cause a suspension of business till every officer's right *de jure* was established. This would not only produce inconvenience, but it would be a sheer absurdity. The law will therefore not permit official acts to be impeached collaterally. This view of the law is well settled, and we are not aware of any authority to the contrary.

Judgment is reversed and the cause remanded. Judge Holmes concurs ; Judge Lovelace absent.