STATE OF MISSOURI at the relation of the CITY OF CLARENCE, a Municipal Corporation, W. H. HUDSON, Mayor of said City and JOHN H. COX, EVERETT BOHANNON, S. H. RICKEY and HARRY NAYLOR, Constituting the Board of Aldermen of said City of Clarence, Relators, v. VERNON L. DRAIN, Judge of the Second Judicial Circuit and Judge of the Circuit Court of Shelby County, and SAMUEL LONG and J. M. McQUARY.—73 S. W. (2d) 804.

Court en Banc, July 17, 1934.

742

*William L. Hamrick, Hulse & Hulse* and *Mahan, Mahan & Fuller* for relators.

*Rendlen, White & Rendlen* and *H. A. Wright* for respondents.

TIPTON, J.—This is an original proceeding in prohibition filed in this court to prohibit the respondent, Vernon L. Drain, Judge of the Second Judicial Circuit, from entertaining and determining a suit filed in the Circuit Court of Shelby County, by Samuel Long and J. M. McQuary, two resident taxpayers of Clarence, Missouri, wherein they sought to enjoin the city of Clarence, Missouri, its mayor and its board of aldermen from issuing certain bonds voted at a special election held in that city on December 22, 1933. These bonds were to be issued for the construction of a sewer system and a waterworks system to be owned and operated by that city, and the plaintiffs further sought to enjoin the defendants in that action from providing for and levying taxes with which to pay these bonds, because the election authorizing the issuance of the bond was fraudu-

lently conducted and did "not represent the fair honest will, vote and expression of the voters fairly and honestly arrived at or reported." The relators filed a demurrer to that petition which was overruled by the respondent judge.

In substance, the petition for injunction alleged that the plaintiffs were residents and taxpayers within and for the city of Clarence, and they brought that action upon their own behalf and all others similarly situated; that W. H. Hudson exercised the functions and powers of mayor and that the other defendants exercised the power and authority of the board of aldermen of that city; that the defendants are preparing to issue bonds for the purpose of establishing a sewer system and a waterworks system; that the defendants acting as the mayor and board of aldermen passed and adopted Ordinances Numbers 222 and 223 for the purpose of calling a special election on December 22, 1933, to test the sense of the qualified voters of the city upon the proposition to incur indebtedness and issue bonds for the purpose of constructing a sewer system and a waterworks system. The ordinance named certain persons as judges and clerks of such election.

The petition further alleged that the mayor and aldermen had not subscribed to the oath of office as provided by statute, and that the mayor and the aldermen were delinquent in payment of their taxes at the time of their purported election or appointment to office and were thereby disqualified from holding office and had no lawful power, right or authority to pass or adopt the aforesaid ordinances or do or perform the matters and things done and which they threaten to do; that the entire personnel of those assuming to be city officials as well as the judges and clerks of the election were partisan proponents for the issuance of the bonds, and that the city officials refused to name upon request at least one election official who was opposed to the bond issue.

The petition further alleged that many disqualified voters (naming them) were permitted to vote who voted in favor of the bonds, and many qualified voters (naming them) were not permitted to vote who would have voted against the bonds; that some persons voted twice in favor of the bonds; that the opponents to the bonds selected a representative to watch the counting of the ballots, but he was not allowed to do so; that persons in favor of the bonds, other than election officials were permitted to be present when the votes were counted; that the ballots were not correctly counted and that the said proposals did not carry by a two-thirds majority of the votes cast; that "an examination of the ballots cast in said election and a legal and lawful inquiry into its said ballots and the counting thereof will disclose the same and plaintiffs ask the same be done;" that the city council wrongfully appointed two challengers of election favorable to said proposals in each voting precinct; "that the election

held as aforesaid was not openly, fairly or lawfully conducted or held."

The petition further alleges that the debt proposed by the city, by the aforesaid proposals, works, structures and bonds to be issued in payment thereof would be in excess of the annual income and revenue of the city for any one year; that "the indebtedness to be contracted or created will exceed in the aggregate with the existing indebtedness of the city of Clarence, five per cent on the value of the taxable property therein ascertained by the assessment next before the last assessment thereof for state and county purposes previous to incurring such proposed and contemplated indebtedness. Wherefore, plaintiffs prayed that the mayor and board of aldermen be enjoined from proceeding with the execution, issuance, negotiation, sale or delivery of the bonds.

By stipulation of the parties to this action the issuance of our preliminary rule was waived and the application filed by the relators "shall be taken and treated as and for such preliminary rule or writ of prohibition in this cause." The application stated that the vote at the election was 565 in favor incurring the indebtedness and the issuance of the bonds and 251 against the proposals.

The respondents' return does not deny this fact, but asserts that "all proceedings were before the Honorable V. L. Drain, Judge of said court, and that due and proper jurisdiction of such matters is, conferred by law upon him, the said V. L. Drain, as Judge of said Court, and the respondents, Samuel Long and J. M. McQuary, were at all times in said matter acting within the rights given" them by law. Respondents further state in their return, that the petition filed in the circuit court is not a proceeding to contest an election.

Under the pleadings in this cause it becomes our duty to examine the petition filed in the circuit court to determine whether the respondent judge had jurisdiction of the subject-matter.

I. The petition of the plaintiffs shows that the mayor and the board of aldermen of the city were *de facto* officers and assumed the duties and performed the functions of such officers in all matters connected with the bond election. "The acts of an officer *de facto*, although his title may be bad, are valid so far as they concern the public, or the rights of third persons who have an interest in the things done. . . . Official acts cannot be impeached collaterally." [Harbaugh v. Winsor, 38 Mo. 327; Wilson v. Kimmel, 109 Mo. 260, 19 S. W. 24; Hill v. Kresge Co., 202 Mo. App. 385.]

Even though the defendants in the injunction suit had not taken the required oath of office and were delinquent in the payment of their taxes, yet the plaintiffs' petition alleges that they assumed the duties and performed the function of such officers, therefore, their official acts cannot be questioned because of their lack of qualifica-

tions to hold such offices. The allegation in the plaintiffs' petition that the defendants are not qualified to hold their respective offices that they usurped, states no ground for equitable relief.

The plaintiffs' petition in the injunction suit next complains of the acts of the officials of the city of Clarence; the election officials, and the general conduct of carrying on the election characterizing these acts and conduct as fraudulent and void. In the oral argument of this cause respondents admitted that the ordinances calling the election and the notice of the election were in due form and complied with the statutes governing the same.

In the case of Long v. Consolidated School District No. 7, Kingsville, Johnson County, 331 Mo. 302, 53 S. W. (2d) 867, the petition for equitable relief was very similar to the petition in the case filed in the Shelby County Circuit Court in alleging fraud in the conduct of the election. Judge GANTT, speaking for the court, said:

"There is no legislative provision for contesting an election of this kind. In this situation plaintiffs contend that a court of equity has jurisdiction, if fraud enters into and materially affects the result of the election.

"In making this contention plaintiffs are confronted with the decisions of this court in State ex rel. Wahl v. Speer, 284 Mo. 45, l. c. 58, 223 S. W. 655, 659. In that case we ruled the identical question. We there said:

" 'The provisions of the enacted law in this State regulating the contest of elections, is persuasive that the Legislature never has intended there should be a judicial inquiry concerning the legality of the voting in a county bond election. The Constitution itself commands the Legislature to designate the courts or judges by whom the several classes of election contests shall be tried and also to provide the manner of trial and all matters incident thereto. [Mo. Const., Art. 8, Sec. 9.] Pursuant to that mandate, statutes have been enacted to contest the election of various classes of officials, also those held under the Local Option Law, and perhaps others. One section of the law reads as follows: "Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice of contest, unless the same shall be continued by consent, or for good cause shown." [R. S. 1909, sec. 5928.]

" 'The expression "every court authorized to determine contested elections," etc., implies that specific authority must be granted to a court to try such cases, or it will not have the power to do so; that a general subject-matter or head of equity cognizance, like fraud, does not suffice to confer this power. Moreover, the mode or pro-

cedure ordered to be pursued in a contest proceeding is incompatible with the course of a suit in equity.

" 'The right of citizens and taxpayers to honest elections is meant to be protected by the judges who supervise the voting at the polls; and so far this protection has been deemed by the Legislature sufficient in case of elections like the one in controversy. The statutes impose on the judges the duty of passing on the qualifications of voters, and of deciding whether a person who offers to vote is entitled to do so. In the performance of this duty, the judges act in a judicial or a quasi-judicial capacity. [Pike v. Megown, 44 Mo. 491; McGowan v. Gardner, 186 Mo. App. 484, 492, 172 S. W. 408; Blake v. Brothers, 79 Conn. 676, 66 Atl. 501, 11 L. R. A. (N. S.) 501, and citation in note.] The right is also accorded to any bystander to challenge a vote. [R. S. 1909, sec. 5900.] Elections to incur public debts have been conducted in this State from an early day, and yet the rule has always been declared that there can be no contest to any election except where one is authorized by statute, and so far no statute of the kind has been enacted in respect of municipal bond elections; whereas statutes are in force for the contest of other kinds. *By reason of this nonaction by the General Assembly and the common-law doctrine that the result of elections, if declared by supervising officials, could not be re-examined judically, and the prevalent doctrine that equity takes no cognizance of such matters, we hold the Circuit Court of Pemiscot County is without jurisdiction of the cause there pending to annul the election in contest.*' " (Italics ours.)

The case of State ex rel. Wahl v. Speer, supra, was a mandamus action, and one of the defenses to that action was that there was pending in the circuit court an injunction suit to prohibit the official from issuing bonds that were voted in an election on the ground that that election was fraudulently conducted. The court held that the Circuit Court of Pemiscot County was without jurisdiction of the injunction suit to annul the election in contest.

It would serve no useful purpose to review the authorities in this and other states as they are reviewed in the cases of Long v. Consolidated School District, supra; State ex rel. Wahl v. Speer, supra, and in Boney v. Sims, 263 S. W. 412. We have consistently held upon a consideration of the common-law doctrine, the provisions of the Constitution of this State, and the absence of any legislative provisions for contest of an election of the character here involved, that a court of equity is without jurisdiction to set aside the result of a bond election on the grounds that the election was fraudulently conducted.

The final attack as alleged in plaintiffs' petition is that the indebtedness to be contracted by the issuance of the bonds would, with the existing indebtedness be more than "five per cent on the

748

value of the taxable property therein ascertained by the assessment thereof for state and county purposes previous to incurring proposed and contemplated indebtedness.''

The petition states no facts showing what the indebtedness would be, or what the indebtedness now is or what is the assessed valuation of the taxable property. It merely states a conclusion.

However, one of the improvements to be built by the bond issue is a waterworks system and the limit of indebtedness is not five per cent as is contained in Section 12 of Article X of our Constitution, but such improvement is governed by Section 12a of that article, which provides that in the purchase or construction of a waterworks system an additional ten per cent on the value of the taxable property is legal. As the indebtedness that would be created by the issuance of the bonds in question would not be governed by Section 12 of Article X of the Constitution, but would be governed by Section 12a of that article, it follows that the petition for injunction does not state any fact which would entitle the plaintiffs to equitable relief because the indebtedness of the city would exceed five per cent of the assessed valuation.

From what we have said it follows that the respondent judge was without jurisdiction to try and determine the injunction suit in question, and that our provisional rule should be made absolute. It is so ordered. All concur, except *Atwood, J.,* who concurs in result.