James Collier BOGGESS, Appellant,

v.

Robert J. PENCE, Mayor, et al., Respondents.

Petition of the MAYOR, COUNCILMEN AND CITIZENS OF the CITY OF LIBERTY, Missouri, for a pro forma decree, etc., Respondents,

v.

James Collier BOGGESS et al., Appellants.

Nos. 46953, 47204.

Supreme Court of Missouri,

En Banc.

March 9, 1959.

**668**

Richard Watson, North Kansas City, for William R. Riggs.

Rufus Burrus, Independence, for James Collier Boggess.

William E. Turnage, City Atty., Liberty, Robert B. Fizzell, Robert B. Fizzell, Jr., Stinson, Mag, Thomson, McEvers, & Fizzell, Kansas City, for respondents.

DALTON, Judge.

Causes Nos. 46,953 and 47,204 have been consolidated on appeal, because both appeals involve a common issue in that the validity of different ordinances of the same municipal corporation are questioned on the same ground, to wit, that one of its councilmen was not legally elected to his said office under the charter of said city. Appellants claim that all of the acts of the city in which this particular individual participated as a councilman (including the matters in question) are "illegal, unlawful, void and of no effect."

Cause No. 46,953 is an appeal by plaintiff-appellant James Collier Boggess from a judgment of the circuit court of Clay County dismissing his second amended petition for a declaratory judgment filed against Robert J. Pence and the Mayor, Councilmen and Citizens of Liberty, Missouri, the latter, a municipal corporation acting under a special charter from the state, and also known as the City of Liberty, Missouri. The petition was dismissed on motion for failure to state a claim upon which relief could be granted. The relief sought by appellant was that defendants be required to show what right and title defendant Robert J. Pence had to the office of city councilman of said city for the fourth ward; that the court determine the right of defendant Pence to hold said office; that, if the court found he was not legally elected to said office to declare him a usurper and not entitled to act therein; that he be enjoined from acting as such councilman; that all of the acts of the city in which said defendant has participated be declared illegal, unlawful, void and of no force and effect; and, particularly, that a certain ordinance of the city council of said city "accepting the jury award for the condemnation of this plaintiff's property, and of appropriating the sum of $52,000 for the payment of the award be * * * examined and declared unlawful, void and of no force or effect" (see case No. 46,882 pending on appeal in Division No. One of this court) and for other equitable relief against the mayor, city clerk and city treasurer of said city to prevent action under the mentioned ordinance.

Cause No. 47,204 is an appeal by intervenors-appellants James Collier Boggess and William R. Riggs from a final judgment in a proceeding instituted by the city of Liberty, Missouri, for a pro forma decree authorizing the issuance and adjudicating the validity of $757,000 principal amount of water revenue bonds of said city. The judgment entered by the circuit court of Clay County found the bonds to be valid and legally binding obligations of the city and approved the proceedings of the city with reference to the issuance of the said bonds. Appellants James Collier Boggess and William R. Riggs had each

filed intervening petitions in said cause contesting the validity of said bonds. One of the grounds assigned in the intervening petitions (the other grounds will be subsequently dealt with) was that Robert J. Pence (the same person referred to in case No. 46,953, supra,) was not entitled to the office which he held as councilman for the fourth ward of said city; that Robert J. Pence had wrongfully, unlawfully and in violation of the city charter taken and assumed the said office and was "assuming to so discharge the duties of said office"; that Robert J. Pence had actively participated in the passage of the ordinances calling the election submitting the issue with reference to the bonds and authorizing their issuance and, therefore, all of said ordinances and said election and the acts of the city with reference thereto were not legally binding on the intervenors or the city. Evidence was offered in support of the allegations of the city's first amended petition for the pro forma decree and also in support of the allegations of the intervening petitions and a judgment was entered granting the city the relief sought.

We have seen that the judgment entered in case No. 46, 953 was based on the alleged failure of the second amended petition for a declaratory judgment to state a claim upon which relief could be granted; that one of the defenses set forth in the intervening petitions in case No. 47,204 was based upon substantially the same facts as alleged in the second amended petition in case No. 46,953; and that in addition (in case No. 47,204) evidence was offered in support of these allegations. Since the allegations in the first case and the allegations and evidence in the second case in support of the intervening petitions are in more or less conformity, we shall briefly state the facts in support of appellants' position in both cases on the issue stated.

A city councilman for the fourth ward of the city of Liberty was to be elected on the 2nd of April 1957. There were two candidates for said office, Walter Archer and Robert J. Pence. At the city council meeting on April 5, 1957, after said election, the mayor named certain individuals "to poll the absentee ballots"; when they finished and reported, the mayor stated to the council "that as a result of the count of absentee ballots there was a tie in the number of votes" for the two candidates. "The mayor asked the city court to produce the poll books and tally sheets of the city election held April 2, 1957. He then appointed the city council as a committee of the whole to *canvas* said poll books and tally sheets to ascertain the results. * * * Thereupon, the council canvassed the ballots cast for councilman for the fourth ward. The result of the *canvas* was Pence, 176, and Archer, 172." After the recount, the council on motion found Robert J. Pence had received the greater number of votes and he was declared elected councilman of the fourth ward. Robert J. Pence thereupon took and assumed the position and office as councilman for the fourth ward of the city of Liberty and has continued to act as such in the matters mentioned in cases No. 46,-953 and 47,204, supra.

The second amended petition for a declaratory judgment in case No. 46,953 alleged that, at the time the council accepted the verdict in the condemnation proceeding against appellant Boggess and appropriated the sum of $52,000 to pay the verdict awarded in that case (case No. 46,882), there were three votes in favor and two opposed and without the affirmative vote of councilman Robert J. Pence there would have been a tie vote and no approval or appropriation; and that the ordinance accepting the verdict and making the appropriation was illegal and void, since Pence had not been legally elected to the office of councilman.

In case No. 47,204 the evidence showed that councilman Pence introduced the resolution and ordinance No. 1970 of the city of Liberty calling for the bond election upon which the issuance of the water revenue bonds was based.

Section 13 of Article II of the city charter of the city of Liberty (Laws 1861,

p. 211) provides that, "Whenever there shall be a tie in the election of members of the council, the judges of election shall certify the same to the Mayor, or person exercising the duties of Mayor, who shall immediately thereupon issue his proclamation, stating such facts, and ordering a new election * * *." Sec. 167, Art. XII, Charter and Revised Ordinances of the city of Liberty, Missouri, 1931.

The matter of Robert J. Pence's participation as councilman, as stated, was investigated by a Grand Jury of Clay County and a report made in November 1957, in part, as follows: "In the matter of the election of a councilman for the 4th ward of the City of Liberty, when a *canvas* of the report of the Judges of the ballots cast at the polls, together with that of those of the absentee ballots, showed a tie vote, Article 6 of the City Charter indicated the necessity for the call of another election. The recount made thereupon by members of the City Council and witnessed, according to testimony, by the Mayor, City Attorney, City Clerk, and indeed the two candidates whose votes were in question, without remonstrance on the part of any individual, was therefore illegal and ill-advised, but without malicious or criminal intent, and was doubtless adopted as an expeditious means of settling the matter."

There was also evidence that the report of the Grand Jury and other facts were known to the prosecuting attorney of Clay County, and also brought to his attention in March 1958 and to the attention of the Attorney General of Missouri. No action in the nature of quo warranto poceedings had been instituted against the said Robert J. Pence. On the evidence presented the court found the issues in case No. 47,204 against intervenors Boggess and Riggs and, after approving the bond issue as heretofore stated, ordered the intervening petitions of the named intervenors "dismissed, with prejudice."

Appellant Boggess, in case No. 46,953, contends that, "the court erred in sustaining the motion to dismiss for the reason that the question of plaintiff's rights with respect to his property which the city sought to take by eminent domain gave him a special property right, which he had a right to have the court pass upon, with respect to the legality of the council action due to the vote of the councilman whose right to act as a councilman and vote was rightfully questioned, and the court should have heard the case and made its findings." Appellant in his reply brief says that this proceeding "is an attack upon a specific ordinance of the council in which Pence participated * * * and cast a deciding vote." Appellant Boggess also insists that to permit councilman Pence to participate by voting in the council to accept the verdict and appropriate money in the sum of $52,000 to pay the judgment in the condemnation suit (instituted by the city of Liberty to acquire appellant's property for off-street parking) denies to appellant due process of law as guaranteed by Sections 2 and 10 of Article I of the Constitution of Missouri, V.A.M.S., and violates the fifth and fourteenth amendment to the Constitution of the United States. This assignment is not further developed.

Both appellants in case No. 47,204 contend that the court erred in approving the water revenue bonds because the ordinances, election and acts of the city relating to the water revenue bonds were not legally passed, enacted and taken, or binding because of the participation of councilman Pence who had not been "duly, properly and lawfully elected to said office."

It is apparent that the issue present in both cases is the *validity*, of the city's ordinances and action with reference to the condemnation case and the bond issue in question, as affected by the activities of councilman Pence.

As stated, cause No. 46,953 is (1) a direct attack upon defendant Pence's right to hold the office of councilman from the fourth ward in the city of Liberty and

seeks to try the title to his office; and (2) it also attacks (because of Pence's particular participation) a particular ordinance of the city of Liberty accepting the jury's award in the condemnation case filed against appellant Boggess. Appellant's theory is that the passage of the ordinance was a direct "result of the vote of one who is a usurper of the office"; that appellant Boggess had the right "to have the appropriation of his lands passed upon by those councilmen who were legally elected and not by someone who is a usurper"; and that appellant was entitled to have that issue tried on its merits in the declaratory judgment action.

■ Appellant Boggess states that he is "aware of the general rule that ordinarily the right to an office cannot be inquired into, except by quo warranto proceedings at the relation of the prosecuting attorney or the Attorney General," but he insists that, when neither of these officers have taken action and the property rights of a private citizen are concerned, he has the right to have the issue determined. Appellant's theory is that, since acts of municipal bodies, whether in the form of resolutions or ordinances may be impeached for fraud at the instance of persons injured thereby, appellant is entitled to relief in this case. Appellant cites Glasgow v. St. Louis, 107 Mo. 198, 203, 17 S.W. 743; In re Twenty-First Street (Kansas City v. Hyde) 196 Mo. 498, 96 S.W. 201, 203, 7 L.R.A.,N.S., 639. These cases do not aid appellant under the facts here. Appellant further insists that quo warranto proceedings are not the exclusive remedy or proceeding whereby the acts of councilman Pence could be raised. He cites State ex inf. Anderson ex rel. Boothe v. Moss, 187 Mo.App. 151, 172 S.W. 1180; State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S.W.2d 1065, 136 A.L.R. 667. The authorities cited do not aid appellant. On the other hand, it appears that the title to a public office or the right of a de facto officer to exercise the rights and duties of the office cannot be tested except by the state in a direct proceeding for that purpose and the authority to institute quo warranto proceedings rests within the discretion of the officers named in Sec. 531.010 RSMo V.A.M.S. State ex inf. Folk v. Talty, 166 Mo. 529, 559, 66 S.W. 361; State ex inf. Dorian ex rel. Black v. Taylor, 208 Mo. 442, 106 S.W. 1023; Fly v. Jackson, 226 Mo.App. 203, 45 S.W.2d 919; Spiking School Dist. v. Purported Enlarged School Dist., 362 Mo. 848, 245 S.W.2d 13, 21; State ex rel. Smith v. Gardner, Mo. App., 204 S.W.2d 319, 322(3, 4).

■ It was alleged in the first case and alleged in the answers and proven in the second case that Robert J. Pence had taken and assumed the office of councilman for the fourth ward of the city of Liberty and that he had assumed to act as such and to discharge the duties of said office under color of right. In the second case the intervenors offered in evidence the minutes of the meeting of the city council of the city of Liberty showing that councilman Pence had been found to have received the greater number of votes and had been declared elected to the office in question. The record in both cases therefore shows that Robert J. Pence was in fact a de facto officer regardless of whether he had been properly elected to the office, or was in fact disqualified from holding it. State v. LaMance, 348 Mo. 484, 154 S.W. 2d 110, 113; State ex rel. City of Clarence v. Drain, 335 Mo. 741, 73 S.W.2d 804, 806; State ex rel. Kansas City v. Coon, 316 Mo. 524, 296 S.W. 90, 103; City of Miller v. Sherman, Mo.App., 139 S.W.2d 1114, 1115. Since it was clear that councilman Pence was a de facto officer of the city and had assumed and performed the duties of the office, his acts as such officer, are valid so far as they concern the public, or the rights of third persons who had an interest in the things done. State ex rel. City of Republic v. Smith, 345 Mo. 1158, 139 S.W.2d 929, 933(5–10); Fort Osage Drainage Dist. of Jackson Co. v. Jackson Co., Mo.Sup., 275 S.W.2d 326, 331; State ex rel. City of Clarence v.

Drain, supra, 73 S.W.2d 804, 805; Perkins v. Fielding, 119 Mo. 149, 24 S.W. 444, 446; Wilson v. Kimmel, 109 Mo. 260, 19 S.W. 24. It follows that councilman Pence's votes on the several motions and ordinances in question were valid and that the mentioned motions and ordinances of the city were unaffected by the matters alleged by appellants. State ex rel. City of Republic v. Smith, supra; City of Boonville ex rel. Cosgrove v. Stephens, 238 Mo. 339, 356, 141 S.W. 1111; Juengel v. City of Glendale, Mo.App., 164 S.W.2d 610, 612; Perkins v. Fielding, supra, 24 S.W. 444; Harbaugh v. Winsor, 38 Mo. 327, 331; St. Louis Co. Court v. Sparks, 10 Mo. 117, 121.

In the Harbaugh case, supra, 38 Mo. 331, 332, the court said: "The rule imparting validity to the acts of a de facto officer is indispensably necessary to prevent the failure of justice. The business of the community could not be transacted without it; irreparable wrong would result from any other doctrine. The public are necessarily compelled to do business with an officer who is exercising the duties and privileges of an officer under color of right, and to say that his acts as to strangers should be void, would be gross injustice. It would cause a suspension of business till every officer's right de jure was established. This would not only produce inconvenience, but it would be a sheer absurdity. The law will therefore not permit official acts to be impeached collaterally. This view of the law is well settled, and we are not aware of any authority to the contrary."

On the facts stated in the second amended petition in case No. 46,953, it is apparent that no declaratory judgment action can be maintained. No facts were alleged tending to show that the action of the city council in either case was "illegal, fraudulent, or the result of the vote of one who is an usurper of the office" of councilman. The facts alleged show that councilman Pence was a de facto officer and the ordinances adopted by the city were not invalid by reason of the vote of councilman Pence. The court did not err in dismissing appellant's petition in case No. 46,953 for failure to state a claim on which relief could be granted or in holding in case No. 47,204, that there was no merit in the affirmative defense set up by appellants on the issue mentioned.

Appellants in case No. 47,204 contend that the pro forma decree authorizing the issuance of and adjudicating the validity of the water revenue bonds of the city of Liberty is erroneous for the further reason that respondent's "petition is in the nature of an 'ex parte' proceedings, naming no one as a defendant, and stating no facts showing there is a justiciable controversy or question between persons whose interests are adverse in fact, therefore there is no right for the petitioner to maintain this proceeding and there is no cause of action for this court to decide or for the lower court to have decided * * *." Appellants say that neither this court, nor the court below, had authority to adjudicate the validity of the water revenue bonds because "there was no adversary proceedings." Appellants insist that in the first amended petition no one is designated as plaintiff or as defendant; that no facts are alleged to show a controversy with any one; that there is "no recitation of any fact calling for judicial decision"; that Sections 108.310 to 108.350 RSMo 1949, V.A.M.S., provide for actions in the nature of declaratory judgment proceedings and the facts stated in respondent's petition do not show a controversy ripe for decision; that "there can be no valid or binding judgment of a court" on the facts alleged; that "the intervening petitions do not supply the grounds or controversy to be decided"; that courts do not give "advisory opinions"; and that a "disputed question" must be presented between adverse parties to have a valid judgment. It does appear that appellants have undertaken to appeal from

what they apparently consider to be an adverse judgment entered against them and binding upon them.

Section 27, art. VI of the Constitution of Missouri provides that, "Any city or incorporated town or village in this state, by vote of four-sevenths of the qualified electors thereof voting thereon, may issue and sell its negotiable interest bearing revenue bonds for the purpose of paying all or part of the cost of purchasing, constructing, extending or improving any revenue producing water, gas or electric light works * * * to be owned exclusively by the municipality, the cost of operation and maintenance and the principal and interest of the bonds to be payable solely from the revenues derived by the municipality from the operation of such utility." This provision has been held to be self executing. State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S.W.2d 302, 304(2).

Sections 108.310–108.350 RSMo 1949, V.A.M.S., provide a special type of proceeding by which a municipality may have the validity of a proposed bond issue determined in advance of offering the bonds for sale. Service by publication is authorized. Section 109.310 RSMo, V.A.M.S., does not require the petition to contain any statement as to the existence of a controversy. Section 108.320, subd. 2 provides that, "Any taxpaying citizen may in person or by legal representative file an intervening petition contesting the validity of such bonds, and in case an intervening petition is filed on or before the day set for the presentation of such petition, the court shall set a definite time for the hearing of said cause at which time the court shall hear and determine all the evidence and see all proofs offered concerning the legality or illegality of such issue." The proceedings are not governed by the Missouri Declaratory Judgment Act, Sections 527.010 to 527.150 RSMo 1949, V.A.M.S., relied upon by appellants.

Section 108.330 provides: "Upon hearing, whether an answer has been filed or not, the court shall carefully investigate the record concerning such bond issue, together with all evidence and proofs submitted at such hearing, and if the court be of the opinion that said bonds are legal and that the laws of the state have been fully complied with then such court shall make an order and decree adjudging such bonds to be a valid and binding obligation upon such * * * municipality, issuing the same * * *."

■ The statutes provide for an adversary proceeding, if one exists,—notice and an opportunity to be heard are provided. Any interested taxpayer has his chance for a day in court and is bound if he fails to appear. The validity of the bond issue was "ripe for decision." In this case, appellants personally appeared and by intervening petitions stated their grounds for the alleged invalidity of the proposed issuance of the bonds. Initially, only the regularity of the proceedings and compliance with statutory provisions was presented by respondent's petition, but when appellants appeared and presented specific issues these were also for decision by the court. A hearing was had and a judgment was entered. We find no merit in appellants' claim that no adversary proceeding was provided for by statute or had in this case. See City of Springfield v. Monday, 353 Mo. 981, 185 S.W.2d 788; City of Liberty v. Jones, Mo.Sup., 296 S.W.2d 117; City of Maryville v. Cushman, 363 Mo. 87, 249 S.W.2d 347.

Appellants further contend the judgment entered holding the bonds valid is erroneous because "this action was commenced, notice given, and ordinances and council action taken, and notice of election, election, bonds and agreements to be authorized were all made in the name of and in favor of 'the City of Liberty.' " Appellants say "the true name by which the municipality is known and may sue and may contract and be contracted with, is 'The Mayor, Councilmen and Citizens of the City of Liberty' as is provided in Section 1 of its Char-

ter;" and that bonds of the "City of Liberty, Missouri" authorized under ordinances, council action, notices of election, bonds and agreements of the "City of Liberty, Missouri" cannot be binding on the municipal corporation incorporated as "The Mayor, Councilmen and Citizens of Liberty, Missouri."

Laws of Missouri 1861, p. 209, show an act entitled, "An act to incorporate the City of Liberty." Article I, Section 1, of the act provides: "All that district of country contained within one mile square, of which the court house of Clay county, in the city of Liberty, is the centre, the sides of said square being respectively parallel to the corresponding sides of said court house, shall be and the same is hereby erected into a city, by the name of 'The city of Liberty;' and the inhabitants thereof are hereby constituted a body corporate and politic, by the name and style of the 'Mayor, Councilmen and citizens of the city of Liberty;' and by that name they and their successors forever, shall have perpetual succession; shall sue and be sued, implead and be impleaded, defend and be defended, in all courts of law and equity, and in all actions whatever; may contract and be contracted with * * *." Section 2 provides, "The city of Liberty hereby created, as soon as may be, shall be divided into six wards, by the present council of said city * * *." Article II sets out the corporate powers of the inhabitants thereby incorporated under the name and style of "Mayor, Councilmen and citizens of the city of Liberty.". Article III provides its legislative powers and Section 36 of Article III provides: "The style of the ordinances of the city shall be: 'Be it ordained by the city council of the city of Liberty.' " Article VII, Section 3 provides: "All suits, actions and prosecutions instituted, commenced or brought by the corporation hereby created, shall be instituted, commenced and prosecuted in the name of the 'Mayor, councilmen and citizens of the city of Liberty. [sic]" The act was approved March 28, 1861.

In 1865 the above incorporation act was amended by an act entitled "An act to amend an act entitled 'an act to incorporate the city of Liberty,' approved March 28, 1861." Laws 1865, p. 421. The charter was further amended, Laws 1868, p. 219, by an act entitled "An Act to amend an act entitled 'an act to incorporate the City of Liberty,' approved March 28, A.D. 1861." Further, Laws 1874, p. 336, show an amendment of the charter under the style "An Act to amend article three of an act entitled 'An act to incorporate the city of Liberty,' approved March 28, 1861, and to add certain new sections thereto." Section 36 of this 1874 act provides: "The style of the ordinances of the city shall be: 'Be it ordained by the city council of the city of Liberty.' " The ordinances of the city here in question comply with Section 36 of the 1874 act.

The record shows that this action (cause No. 47.204) was commenced on June 26, 1958 by the filing of a petition styled: "In The Matter of The Petition of the City of Liberty, Missouri, for a Pro Forma Decree Authorizing the Issuance and Adjudicating the Validity of $757,000 Principal Amount of Water Revenue Bonds of said City." The petition purported to have been filed by a municipal corporation described as "The City of Liberty, Missouri." Thereafter, on July 9, 1958, the petitioner filed its first amended petition styled, "First Amended Petition for Pro Forma Decree Authorizing the Issuance and Adjudicating the Validity of $757,000 Principal Amount of Water Revenue Bonds of The Mayor, Councilmen and Citizens of the City of Liberty, Missouri (also known as The City of Liberty, Missouri)," and designated itself as follows: "Comes now the Mayor, Councilmen and Citizens of the City of Liberty, Missouri (also known as and hereinafter referred to as the City of Liberty, Missouri) a municipal corporation, and files this petition * * *."

On these facts appellants contend "there was a departure from the original cause" since the two actions seek to validate the

bonds of different municipalities; and that the amendment could not be made, because "to do so is to substitute an entirely different party, and to validate an entirely different bond issue * * * a change of subject matter." Appellants cite Daiprai v. Moberly Fuel & Transfer Co. 359 Mo. 789, 223 S.W.2d 474, holding that an amendment to a petition could not be made substituting a corporation as defendant for a named partnership and so to avoid the bar of the statute, which had run against plaintiff before the amendment. The case is not applicable here where the amended petition purports to have been filed by the same corporate entity and seeks validation of the same bond issue. The first amended petition here does not purport to be a substitution or entire change of parties plaintiff, but only to add a further name or description of the same corporate entity. The court did not err in permitting the amendment. See Benanti v. Security Ins. Co., 222 Mo.App. 763, 9 S.W.2d 673, 675(4).

The record shows that appellants filed intervening petitions to the first amended petition after the petitioner was designated as "The Mayor, Councilmen and Citizens of the City of Liberty, Missouri" and the action was being prosecuted in that name. The judgment appealed from was therefore entered in a proceeding in which the petitioner was described as stated and the intervenors were adverse parties contesting the validity of the bonds in question. The judgment was entered on the issues tendered.

As stated, appellants rely on the fact that "all through the proceedings," prior to the filing of the first amended petition, the name "City of Liberty, Missouri" rather than "The Mayor, Councilmen and Citizens of Liberty, Missouri" is used. This applies to the caption of the original petition; ordinance No. 1970 calling a special election for the purpose of submitting the proposition to issue bonds "of the City of Liberty, Missouri"; the form of the ballot containing the proposition; the council's action concerning the result of the election,

to wit, acting as the "City Council of the City of Liberty, Missouri" with reference to the issuance of "waterworks revenue bonds of the City of Liberty, Missouri"; the form of ordinance No. 1983, authorizing the bonds "of the City of Liberty, Missouri"; the form of the bonds with the "City of Liberty, Missouri" as the promisor; the covenants with respect to the holders of the bonds; the purported execution of the bonds by said city; the form of the coupons attached; and that the provisions of the ordinance shall constitute a contract between the "City of Liberty, Missouri, and the holders" of the bonds. It clearly appears that all of the business of the city in connection with the matters in question were conducted in the name of the "City of Liberty, Missouri," prior to the filing of the first amended petition.

Appellants also point to the fact that the notice of intention to file a petition for a pro forma decree authorizing the issuing and adjudicating the validity of the bonds in question (the proof of publication of which notice was filed in the cause) was published in the name of the City of Liberty, Missouri. See Section 108.320, subd. 1 RSMo 1949, V.A.M.S. No question is raised as to form, content, or dates of publication of the notice, except that the notice was in the same style and caption as shown by the original petition filed in this case, that is, that the municipality was designated throughout as the "City of Liberty, Missouri." Appellants insist that the notice, as published, was insufficient to confer jurisdiction on the circuit court to enter the judgment appealed from which is based on the first amended petition.

It is on the basis of the above facts that appellants contend that the court erred in entering judgment on the first amended petition as prayed and holding " * * * that the $757,000, principal amount of Water Revenue Bonds of petitioner dated July 1, 1958, authorized by Ordinance No. 1983 of said city, be and they are hereby adjudicated to constitute valid and legally

binding special obligations of the City of Liberty, Missouri * * * (and) that the intervening petitions of William R. Riggs and James Collier Boggess be, and the same are hereby dismissed, with prejudice * * *."

Appellants argue that the use of the name "City of Liberty, Missouri" by the city council in question evidences "arbitrary action"; that such use is "without legislative authority"; that the municipality must use its legal name "until it is legally changed"; that the use of both names "emphasizes the defect of the whole proceedings and demonstrates the invalidity of the whole proceedings because of the refusal to use the true charter name"; and that the attempt of "a municipality to use a different name from its charter given name is in violation of Section 27, [art. VI] authorizing a city to issue and sell *its* negotiable interest bearing bonds."

Appellant James Collier Boggess in his second amended petition, in case No. 46,-953, for a declaratory judgment, while naming the Mayor, Councilmen and Citizens of Liberty, Missouri, as defendant alleged: "that he is a resident and citizen of the City of Liberty, Missouri, and that he is the owner of lands, property and business enterprise in the City of Liberty, Missouri, and that he is a taxpayer of the said City of Liberty * * *; that the said city is also known as and uses the name of City of Liberty, Missouri * * * that the City of Liberty is a municipal corporation by virtue of an enactment of the Legislature of Missouri, duly passed and approved on the 28th day of March, 1861 * * *."

Appellant William R. Riggs in his intervening petition in case No. 47,204 "states that he is a taxpaying citizen of the City of Liberty, Missouri, and files this intervening petition herein, pursuant to the provisions of Section 108.320, Missouri Revised Statutes, 1949 [V.A.M.S.], and does hereby contest the validity of the $757,000 principal amount of water revenue bonds authorized

to be issued under the provisions of Ordinance No. 1983 of said city * * *."

This court, as recently as December 10, 1956, handed down an opinion in the case of Petition of the City of Liberty, Missouri v. Jones, supra, 296 S.W.2d 117, directing the trial court to enter a judgment authorizing the issuance of certain Public Park System Revenue Bonds of the said city and to declare the validity of the bonds as prayed by the city, but the question of the legality of the name was not an issue in that case.

■ No question is raised by appellants that any taxpayer of the respondent city was or could have been misled to his damage by the use of the name "City of Liberty, Missouri." Many cases are cited where the city has sued or been sued in the name, City of Liberty, Missouri. It appears to be conceded that such name has been used by the city for many years. The subsequent legislative enactments, as we have seen, refer to the city by the name by which the city is commonly and well known. It seems to us that the issue presented is whether, in view of the provisions of its charter with reference to its legal name, the authority granted the city to sue and be sued and to contract in such name and the other provisions of the several legislative acts hereinbefore referred to, the municipal corporation may conduct its business, pass ordinances, institute actions, give notice of election, conduct an election, declare the result of the election, pass other ordinances, issue bonds and enter agreements with reference to such bond issue, all in the name of "City of Liberty, Missouri," and have such bonds approved as having been legally issued and valid special obligations, or water works revenue bonds of a city which bears the name of "The Mayor, Councilmen and Citizens of the City of Liberty, Missouri." It is apparent that the legislature in the act approved March 28, 1861, used the two names interchangeably and expressly authorized the later and shorter

name to be used in ordinances of the said city. Reference is had to the repeated use of both names in the 1861 act. While every municipal corporation must have a name by which it is known or identified, the legislative acts hereinbefore cited and no others called to our attention, prohibit such a corporation from contracting in a name repeatedly mentioned in its charter (and used synonymously with its corporate name) and a name by which it has long been known. See 62 C.J.S. Municipal Corporations § 35, p. 113; 18 C.J.S. Corporations § 166, p. 561; Guess v. Russell Bros. Clothing Co., Mo.App., 231 S.W. 1015, 1016(2). In view of the use of the shorter name, "City of Liberty, Missouri," both in the 1861 act and in each of the subsequent amendatory acts, we think the city should be said to be fully authorized to use the name "City of Liberty, Missouri" in passing its several ordinances, entering the contracts, giving notice of election, conducting the election and issuing the bonds. It is evident from the provisions of the 1861 act that both names designate the same legal entity.

It has been noted that the 1861 act provided that the incorporated city "shall" sue and be sued, in a particular name, but the act used the word "may" when referring to its power to contract. In this action we need not determine whether the word "shall", as used in the 1861 and 1874 acts in view of the other statements in the 1861 act, should be held directory only. See State ex inf. Folk v. Talty, supra, Hudgins v. Mooresville Consolidated School Dist., 312 Mo. 1, 278 S.W. 769, 770. This judgment was entered after the corporation was appearing in both names.

We must and do hold that the notice of intention to file the application for pro forma decree, although published in the name of "City of Liberty, Missouri" was sufficient to confer jurisdiction on the circuit court under the statutes mentioned and to authorize a valid binding judgment against all interested persons and taxpayers of the respondent municipality whether they appeared to contest the action and filed intervening petitions or not. The court did not err in entering the judgment approving the issuance and determining the validity of the water revenue bonds in question and in holding them to be valid and legally binding special obligations of the "Mayor, Councilmen and Citizens of the City of Liberty, Missouri," also known as the City of Liberty, Missouri.

The judgment in each case is affirmed.

All concur.